UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Tony B. Gaskins, Mac Hudson, Orrin Simmons,
Jeffrey Hardy, Prince Moses, Robert Brown,
Derick Tyler, Joseph Irizarry, Michael Keohane,
Zakarya Bush, Steve Jacobbe, Samuel Correa,
Trevor Higgins, Carl Odware, et al,

    Plaintiffs,

v.

Kathleen M. Dennehy, Commissioner
of Correction; Timothy Hall, Assistant
Deputy Commissioner; David Nolan,
Superintendent of MCI-Cedar Junction;
Lisa Mitchell, Deputy Superintendent
of MCI-Cedar Junction; John Luongo, Deputy
of Programs; Beverly Veglas, Librarian, et
al,

    Defendants.

Civil Action
No.

05-11230 DPW

Referred to Ch MJ mB Bowle

Verified Civil Complaint
and Jury Demand

## I. INTRODUCTION

This is a civil action brought by a class of plaintiffs on behalf of others similarly situated in the Departmental Disciplinary Unit ("DDU"), where they are being denied "adequate" access to the law library and to do proper research in violation of Bounds v. Smith. Also, the defendants are not allowing plaintiffs, and others, meaningful access to the courts where they have instituted a policy in DDU that attorney calls can only be made upon a written request to the Superintendent seeking his permission to call an attorney in violation of the 1st and 14th Amendments. And during attorney visits the visits are "non-contact" unless the attorney calls the

Superintendent or Deputy Superintendent seeking permission for a contact visit with his client. And if a contact visit is allowed, the prisoner is left on the visit with his attorney in "full restraints" hindering his ability to proper attorney-client confidential privilege as required by longstanding law. These actions violates the attorney-client privilege and arbitrarily interferes with DDU prisoners access to the courts. And the defendants have provided the plaintiffs in DDU with "rubber pens" that are inadequate and "lacking."

## II. JURISDICTION

Jurisdiction is invoked upon this court pursuant to 42 U.S.C. § 1983.

## III. PARTIES

1. Tony B. Gaskins, is and was at all times relevant to this complaint as the plaintiff.

2. Mac Hudson, is and was at all times relevant to this complaint as the plaintiff.

3. Derick Tyler, is and was at all times relevant to this complaint as the plaintiff.

4. Joseph Irizarry, is and was at all times relevant to this complaint as the plaintiff.

5. Orrin Simmons, is and was att all times relevant to this complaint as the plaintiff.

-3-

6. Jeffrey Hardy, is and was at all times relevant to this complaint as the plaintiff.

7. Prince Moses, is and was at all times relevant to this complaint as the plaintiff.

8. Robert Brown, is and was at all times relevant to this complaint as the plaintiff.

9. Michael Keohane, is and was at all times relevant to this complaint as the plaintiff.

10. Zakarya Bush, is and was at all times relevant to this complaint as the plaintiff.

11. Steve Jacobbe, is and was at all times relevant to this complaint as the plaintiff.

12. Samuel Correa, is and was at all times relevant to this complaint as the plaintiff.

13. Trevor Higgins, is and was at all times relevant to this complaint as the plaintiff.

14. Carl Odware, is and was at all times relevant to this complaint as the plaintiff.

15. Kathleen M. Dennehy, the defendant, is the Commissioner of Correction who is being sued in both her official and individual capacity.

16. Timothy Hall, the defendant, is the Assistant Deputy Commissioner of Correction who is being sued in both his official and individual capacity.

17. David Nolan, the defendant, is the Superintendent of MCI-Cedar Junction who is being sued in both his official and individual capacity.

18. Lisa Mitchell, the defendant, is the Deputy Superintendent of MCI-Cedar Junction who is being sued in both her individual and official capacity.

19. John Luongo, the defendant, is the Deputy of Programs at MCI-Cedar Junction who is being sued in both his official and individual capacity.

20. Beverly Veglas, the defendant, is the Librarian at MCI-Cedar Junction who is being sued in both her official and individual capacity.

## IV. STATEMENT OF THE FACTS

21. In the Departmental Disciplinary Unit ("DDU") plaintiffs are being denied adequate law library services to do "proper research" to properly litigate pending cases before the courts.

22. The 'makeshift' library in DDU has "some" Federal West Key books (about 15); some State West Key books (about 4); no Mass. Gen. Law books with the esception of two books: one Mass. Const. and one with the Federal Const.

23. The 'makeshift' library in DDU has a Black's Law Dictionary and a Lawyer's Diary. It has no Massachusetts

cite caselaw books; no Mass. Advance Sheets or Federal Advance Sheets; no F.Supp. 2d caselaw books; no F.3d caselaw books; no United States Supreme Court caselaw books; no Shepard cites for State, Federal and Supreme Court decisions. And no immediate access to a photocopier. In order to receive photocopies, plaintiffs must know the "exact cite" or they will not receive photocopies.

24. Plaintiffs will be lucky if they were to receive 4 hours of library access per month. Library access is for two-hour periods, but one person may get in once or twice a month.

25. Plaintiffs abilities to do legal research is seriously hindered by these omissions from the DDU library in conjunction with the "Hitlerian" policy on the access to legal copies and research invoked "mainly" by Beverly Veglas (hereinafter "Veglas"), and sanctioned by Lisa Mitchell (hereinafter "Mitchell"), and endorsed by David Nolan (hereinafter "Nolan"), John Luongo (hereinafter "Luongo") and Kathleen Dennehy (hereinafter "Dennehy").

26. All the named officials Dennehy, Nolan, Mitchell and Luongo, per request of Veglas, gave Veglas absolute "discretion" to deny prisoners request for legal copies even if her denial of the requested copies will adversely affect the requesting prisoner's case.

27. Plaintiffs and others similarly situated have put their total reliance on the librarian to honor their request for copies or copies of certain caselaw, if she chooses to honor it, and then they must wait for "days" to receive back the requested materials, if Veglas approves it.

28. Plaintiffs and others similarly situated are not allowed to copy sections of the Federal West Key, Massachusetts West Key, Mass. Digest, Mass. Practice, Shepards Books, etc., per order of Veglas and endorsed by Mitchell, Nolan, Luongo and Dennehy, respectively.

29. Plaintiffs are also being denied the right to photocopy legal materials other than their own to exchange with co-plaintiffs or to use as a reference in their own legal cases pending before the courts.

30. Tony Gaskins has a civil action pending in Superior Court, Gaskins, et al v. Dennehy, et al, Suff. Sup. Ct. Civ. Act. No. 05-0257-D, in which he needed copies of his "Rule 9 Compliance Motion" right away along with some requested cases.

31. Gaskins made the written request on 3/27/05, and on 3/28/05, he received the motion back along with the requested caselaw copies with a message from Veglas stating, "Please fill out attachment C completely and attachment F

on back of form and return to main Library through CPO Gaspar."

32. Veglas' actions here seriously hindered Gaskins ability to file his Rule 9 motion which must be filed immediately. Because not only did Veglas not photocopy his motion, but when she sent it back, Gaskins now has to send it to Correctional Program Officer (CPO) Gaspar (DDU Caseworker) and he will then present it to Veglas. Then, if she wants, she will either make the copies or, again, send it back uncopied. This copying process is seriously flawed and inadequate.

33. Everything must go through the Main Library and seriously affects one's ability to properly research and litigate his case he may have pending in court.

34. On 3/26/05, Gaskins and Hudson were visited by attorney, Eva Clark. Upon entering the DDU, she was told the visit would be non-contact per order of Nolan and Mitchell.

35. Gaskins was the first to be called out to visit with attorney Clark. He was placed in the non-contact visiting area and had to discuss legal matters over the phone to his attorney behind a glass partition (where the phone calls are monitored).

36. Also, Attorney Clark had some legal documents for Mr. Gaskins and Mr. Hudson and she had to give it to the guards to give to both plaintiffs violating attorney-client privileged communication (which was held by the guards for over an hour).

37. Jeff Hardy was also denied contact with his attorney Rosemar Scapicchio during a visit, and Attorney Scapicchio got up and walked out because she said she had a right to contact with her client.

38. Michael Keohane had a contact visit with his attorney but had to remain in "full restraints" cuffed behind his back, i.e., leg irons and handcuffs.

39. Superintendent Nolan, Mitchell, and Luongo has instituted this draconian policy to discourage prisoners contact and communication with their attorneys.

39. The policy of completely shackling a prisoner disallows a prisoner to take notes or sign necessary court documents or present his legal issues effectively to his advocate, thereby denying him the right to participate in his defense.

40. This also done through attorney calls. The plaintiffs and others similarly situated in DDU are entitled to call their attorneys "any time" during work hours and days,

if a matter of importance arises which the plaintiffs must discuss with their attorneys.

41. Due to Nolan's, Mitchell's and Luongo's policy, a prisoner must write the Superintendent seeking his permission to call his attorney. His response can take up to days which would effectively deny any DDU prisoner's right of meaningful access to the courts as required by the federal constitution. DDU visiting is governed by the promulgated regulation 103 CMR 483.00, et seq. A DDU prisoner has in the past been permitted contact attorney visits with no handcuffs. There has been no reason for the policy change for full restraints.

42. In DDU, prisoners can earn up to 4 personal calls "maximum" per month. If the four calls runs out, and the prisoner needs to call his attorney, his attorney must request permission, in writing, to the Superintendent.

43. The defendants actions here are deliberate, intentional and indifferent, whereas they have callously, capriciously and arbitrarily sought out to deprive plaintiffs and others similarly situated rights in DDU by effectively providing them with an inadequate law library system, interferring with their ability to talk privately with their lawyers, and to have contact with then during visiting periods; and for denying plaintiffs access to the courts by

by conversing with their lawyers on the phone unless permitted by the prison Superintendent.

44. Prisoners within any segregation unit within the Department of Correction is regulated by 103 CMR 482.08(1) which provides: "Telephone calls to pre-authorized attorney numbers shall not be suspended or curtailed except in an institutional emergency."

### INADEQUATE WRITING PENS PROVIDED TO DDU PRISONERS

45. After a guard was stabbed in the eye with a pen, defendants provided all DDU prisoners with "ribber pens" that are inadequate , and contrabanded all "proper pens" from usage in DDU and 10 Block. One cannot "effectively" write with the "rubber pens" without seriously altering the pens which still makes writing quite difficult.

46. The defendants replacement of "proper pens" with "rubber pens" is an "exaggerated response" because the rubber pens can cause the same damage as a proper pen if used for that purpose.  All the rubber pens does is effectively hinders a prisoner's ability to write the courts, loved ones, family and friends, which interferes with the right to free speech and communciation by letters and mail.

47. Plaintiffs realleges and reaffirms paragraphs 1-46.

**V.   CAUSE OF ACTION**

**Count I.**

48. Beverly Veglas' actions here effectively disrupts plaintiffs ability to do proper legal research and to litigate pending cases in the State and Federal Courts in violation of Bounds v. Smith and Cepulonis v. Fair, and the 14th Amendment to the United States Constitution.

**Count II.**

49. Kathleen Dennehy, David Nolan, Lisa Mitchell and John Luongo's actions in not providing plaintiffs with an "adequate" law library in DDU violates Bounds v. Smith and Cepulonis v. Fair, and the 14th Amendment to the United States Constitution.

**Count III.**

50. David Nolan, Lisa Mitchell and John Luongo's policy of denying plaintiffs contact visits with their attorneys denies plaintiffs right to attorney-client privileged communication in violation of the 6th and 14th Amendments to the United States Constitution.

**Count IV.**

51. David Nolan, Lisa Mitchell and John Luongo's policy denying plaintiffs contact with their attorneys, and where the attorneys must turn over "privileged communication" materials to guards to give to plaintiffs violates attorney-client privileged communication rights in violation of the 1st, 6th and 14th Amendments to the United States Constitution.

**Count V.**

52. Katheleen Dennehy, David Nolan, Lisa Mitchell and John Luongo giving Beverly Veglas "total discretion" over plaintiffs ability to do legal research, make legal photocopies and to be able to timely file court documents— access detrimental to "adequate" access to the courts, and where Mrs. Veglas has denied copy requests, violates the 14th Amendment to the United States Constitution, Bounds v. Smith and Cepulonis v. Fair.

**Count VI.**

53. Defendants violated the 1st and 14th Amendments to the United States Constitution and access to properly communicate in writing to the courts, loved ones, family and friends, when Kathleen Dennehy, David Nolan, Lisa Mitchell and John luongo issued "rubber pens to plaintiffs that are unusable and is an exaggerated response by punishing all DDU prisoners (who have properly used their prior issued "proper pens" appropriately) for the actions of one prisoner.

54. Plaintiffs realleges and reaffirms paragraphs 1-53.

### VI.  PRAYER FOR RELIEF

Wherefore, the plaintiffs prays for the following relief:

A. Award plaintiffs against each defendant, jointly and severally, $50,000.00 in punitive damages for the

blatant violation of their rights to "meaningful" and "adequate" access to the courts as outlined in this complaint in all respects.

    B. Award plaintiffs against each defendant, jointly and severally, $25,000.00 in compensatory damages for the blatant violation of their rights to attorney-client privileged and private access as outlined in this complaint in all respects, and to communicate by phone with their attorneys.

    C. Grant a preliminary and permanent injunction enjoining the defendants from violating defendants rights as follows:

    1. *Order* the defendants from denying contact visits with their attorneys, and that prisoners are no longer to be placed in full restraints during contact visits with their attorneys;

    2. *Order* defendants from denying plaintiffs the ability to contact their attorneys by phone unless having an earned phone slip or a written letter to the Superintendent by the prisoner's attorney;

    3. *Order* defendants from using an "exact cite" system for photocopying and order that a photocopier must be placed in the DDU for access by prisoners during their use of the law library, or if immediate copies are needed by prisoners;

4. *Order* Beverly Veglas from denying prisoners with photocopies of legal materials other than original documents, and order that she must allow copies to be made of materials that are legal, whether if they are the requesting party's or not;

5. Order that an "adequate" law library must be set up in the DDU where the prisoners must be allotted the same amount and type of books as outlined in Cepulonis v. Fair. There is plenty of space in the DDU to set up an effective law library comparable and better to the one now set up in the satellite law library in 10 Block;

6. *Order* the defendants from their continuance of providing plaintiffs with "rubber pens," and order their blanket policy unconstitutional and that all parties, who have not altered their "proper pens," must be allowed to continually use them unless altered to use as a weapon. The rubber pens are "lacking" and are ineffective and unusable.

D. Award plaintiffs attorney fees and court costs.

E. Plaintiffs demand a trial by jury.

F. Grant plaintiffs other relief this court deems just and equitable.

Respectfully Submitted,

*Tony B. Gaskins*
Tony B. Gaskins, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

-15-

*[signature]*
Mac Hudson, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Orrin Simmons, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Jeffrey Hardy, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Robert Brown, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Derick Tyler, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Joseph Irizarry, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Michael Keohane, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Zakariya Bush, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Steve Jacobbe, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Samuel Correa, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Trevor Higgins, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Prince Moses, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

*[signature]*
Carl Odware, pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

Dated: 5/31/05

## VII. VERIFICATION

The plaintiffs verify that the facts contained herein this complaint are true and accurate.

_____          _____
Tony B. Gaskins                          Mac Hudson

_____          _____
Orrin Simmons                            Jeffrey Hardy

_____          _____
Prince Moses                             Robert Brown

_____          _____
Derick Tyler                             Joseph Irizarry

_____          _____
Michael Keohane                          Zakariya Bush

_____          _____
Steven Jacobbe                           Samuel Correa

_____          _____
Trevor Higgins                           Carl Odware


All plaintiffs address is:

MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

Dated: 5/8/05