**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Tony B. Gaskins, et al.,

    Plaintiffs,

v.

Kathleen Dennehy, et al.,

    Defendants.

Civil Action
No. 05-11230-JLT

**PLAINTIFFS JOINT MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION FOR A TEMPORARY RESTRAINING**
**ORDER AND A PRELIMINARY INJUNCTION**

**STATEMENT OF THE CASE**

This is a civil action brought by the plaintiffs under
42 U.S.C. § 1983, for adequate law library access or legal
assistance, legal supplies within the Department Disciplinary
Unit (DDU), among other abridgements of plaintiffs access
to the courts.  Plaintiffs seeks an emergency TRO and
Preliminary Injunction against the defendants obstructing
their access to the courts via restricting attorney calls
and to receive adequate writing pens to write with and
file pleadings with the courts.

**STATEMENT OF THE FACTS**

1.  On or about November 26, 2004, defendants issued
a notice order confiscating all regular pens from prisoners
housed in 10 Block segregation and DDU, respectively.
This arose from an isolated incident with a prisoner in DDU.

However, before this "isolated" incident, and since the operation of both segregation units, regular pens have been permitted use by all prisoners.

2. The new pens are small rubber tubes flexible with ink. A prisoner cannot effectively grip these pens to do any "extensive" writing beyond signing his name. The pen has to be stabilized for use which hurts and damage the fingers during usage for any long period of time. See Declaration(s) attached hereto for reference.

3. Plaintiffs are entitled to unrestricted attorney calls pursuant to 103 CMR 482.00, et seq. and G.L.c. 272 § 99. The defendants, throughout the DOC's segregation units, have permitted attorney calls "unrestricted" as needed upon request by a prisoner, that were verified by prison officials by either dialing the numbers themselves to verify the call, or look into the Lawyer's Diary to verify the number being called is an attorney's.

4. Plaintiffs confined in DDU have to "earn" their phone calls which are up to four (4) maximum per month. Attorney calls are allotted within this rule. If a prisoner does not earn any phone slips, he will not be permitted to call his attorney at all unless the attorney calls the Superintendent at the prison and seek his permission to have his client call the office. How the defendants have structured this policy is for attorney calls, the need is centered around the attorney's access as oppose to the prisoner's needs.

5. Hudson's attorney, Benjamin Goldberger, informed Superintendent Nolan that continual access to the phone was needed. Exhibit B(2)-(7). Hudson's criminal attorney Greg Shubert informed Nolan of his continual need to confer with Hudson during the criminal appeal. Exhibit B(10). Attorney Eva Clark, Hudson's standby counsel on a civil matter, informed Mrs. Dennehy of the need of continual phone access. Exhibit B(8).

6. Gaskins also had his criminal attorney, John J. Barter, contact Mr. Nolan regarding the continual need to confer with his client during the appeal stages of his case. Exhibit B(11). Attorney Patricia Garin, Gaskins other counsel, was informed by prison officials that no policy restricting attorney calls existed. Hudson and Gaskins were permitted, for some time, phone access upon their request to prison staff. See Captain Brown's response to Hudson outlining the policy. Exhibit B(1) and B(13).

7. On or about May 17, 2005, Mr. Nolan required all prisoners to use their earned phone slips for personal calls on attorney calls, and that attorney calls are "restricted" to only be made on scheduled phone days in which two days out of the week are when prisoners are permitted to make calls during the morning hours. The

present policy requires that plaintiffs "earn" their
attorney calls as oppose to possessing the right to call
their attorneys as needed.  Attorney calls are a right,
not a privilege. Exhibit B(4).

## ARGUMENTS

In determing a TRO and Preliminary Injunction, courts
generally consider several factors: 1) Irreparable harm,
2) balance of hardship, 3) likelihood of success on the
merits, and 4) public interest.

## A. THE PLAINTIFFS ARE THREATENED WITH IRREPARABLE HARM

Plaintiffs are being denied adequate legal materials,
in particular, proper pens to draft their legal documents
legible for filing with the courts, grievances, or letters
to government officials.  The defendants actions are
severely impeding on their ability to confer with their
counsels effectively during the pendency of their criminal
and civil cases  by "restricting" plaintiffs to earn
attorney calls, and by only allowing attorney calls to
be made on specific scheduled days at select times  provided
by prison staff.  Such conduct by defendants are a clear
violation to effective access to the courts, thereby
violating  plaintiffs 1st, 6th and 14th Amendment Rights
to the United States Constitution and 103 CMR 482.00, et seq.

As a matter of law, the continuing depriavtion of constitutional rights to effetcive access to the courts constitute irreparable harm. See, e.g., Bounds v. Smith, 430 U.S. 817, 822 (1977); Cepulonis v. Fair, 732 F.2d 1 (1st Cir. 1984); Meola v. Fitzpatrick, 322 F.Supp. 878 (1st Cir. 1971); Gluth v. Kangas, 951 F.2d 1504 (9th Cir. 1991). The plaintiffs will suffer irreparable harm if this practice is continued and allowed by this court because the defendants have effectively shut down the plaintiffs ability to adequately communicate with their attorneys by contacting them when needed, not vice versa. Moreover, plaintiffs have several on-going litigation among pending criminal and civil cases or appeals. See Declarations attached hereto for reference. The actions by the defendants threaten the plaintiffs with injury of not being able to meet court deadlines.

## B. THE BALANCE OF HARDSHIPS FAVORS THE PLAINTIFFS

In this case the present constitutional deprivations of effective access to the courts outweighs any alleged suffering by defendants. The suffering defendants will experience is having to comply with 103 CMR 482.00, et seq. (phone regulations) and G.L.c. 272 § 99, in permitting plaintiffs attorney calls, as needed, upon their request and needs to confer with their attorneys as is the practice

throughout the entire DOC. See Declarations attached.

The defendants will not experience any hardships by supplying plaintiffs with regular pens to litigate their issues and to write with to petition the court for redress as mandated by the constitution. For the defendants, it will be business as usual. Therefore, the balance of hardship favors the plaintiffs. See, e.g., Mitchell v. Cuomo, 748 F.2d 804, 808 (2d Cir. 1984) (holding that dangers posed by prison crowding outweighed state's financial and administrative concerns); Duran v. Anaya, 642 F.Suop. 510, 527 (D.N.M. 1986)(holding that prisoner's interest in safety and medical care outweighed state's interest in saving money by cutting staff).

## C. **PLAINTIFFS WILL LIKELY SUCCEED ON THE MERITS**

Plaintiffs have a strong likelihood of success on the merits. What the defendants have done here by making plaintiffs "earn" protected constitutional rights to make attorney calls as oppose to ensuring the right as needed, violates 103 CMR 482.08(1) Inmate Telephone Use for Court, Attorney Contact, that states:

> (1) Telephone calls to pre-authorized attorney numbers shall not be "suspended" or "curtailed" except in an institutional emergency. Telephone calls to pre-authorized attorney numbers shall not be subjected to telephone monitoring or recording.

The regulatory provisions are grounded in the sta-
tute G.L.c. 272 § 99, which prhibits prison officials
from obstructing a prisoner's telephone access to the
courts.   In that light, the Superintendent cannot suspend
or curtail plaintiffs constitutional protected rights
to attorney calls. See 103 CMR 482.07(4)(Telephone calls
to court and attorneys shall not be suspended). Exhibit
E.   The policy employed by the defendants are actually
governing personal phone calls. See Orientation Handbook
of DDU attached, Exhibit F, where plaintiffs must earn
their slips based on good behavior in order to make
personal phone calls.   Personal and attorney calls are
clearly distinguished as two different entities by law
and promulgated regulations 482.08 and 482.09.   Personal
calls being discretionary,and legal calls are nondiscre-
tionary (when attorney must be contacted).   Therefore,
defendants present practice is curtailing plaintiffs
attorney calls and access to the courts.   Plaintiffs at-
torney calls and/or court calls should be as every pri-
soner housed in segregation. See Declarations attached.
See also Souza v. Travisono, 498 F.2d 1120 (1974);
Washington v. Reno, 35 F.3d 1093, 1098-1100 (1994)(Pre-
liminary injunction granted on unreasonable restriction
on attorney calls); Procunier v.  Martinez, 416 U.S.
468 (1974).[1]

---

[1] The ability to communicate with attorneys via mail has proven strained. See grievances
and mail complaints filed, attached hereto at Exhibit D. Hudson has had his legal and
non-legal mail tampered and interfered with on numerous occasions. Also, the time delay
in which it takes to communicate via mail is a problem.

Judge Zobel found the pens "wanting." See February 28, 2005 Order attached hereto as Exhibit A(1)-(3). The defendants (the same as here) in Matthew's case re-issued him a regular pen rather than accepting that Court's invitation to be heard on the issue as declared in their statements. Plaintiffs have ongoing criminal and civil cases that must be litigated requiring adequate pens to write with. See physical pen attached as an exhibit for the court's examination. The defendants are mandated to provide adequate writing pens other than the present rubber pens. Therefore, plaintiffs are likely to succeed on both claims.

## D. THE RELIEF SOUGHT WILL SERVE THE PUBLIC INTEREST

The grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law. Duran v. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986)(Respect for the law, particularly by prison officials responsible for the administration fo the States correctional system, is in itself a matter of the highest public interest). See, e.g., Llewelyn v. Oakland County Prosecutor office, 402 F.Supp. 1379, 1393 (1975)(constitution is the ultimate expression of the public interest).

### PLAINTIFFS SHOULD NOT BE REQUIRED TO POST SECURITY

Plaintiffs are indigent and are unable to post security.

The court has discretion to excuse an impoverished litigant
from posting security. Orantes-Hernandez v. Smith, 541
F.Supp. 3521, 385 n.3 (1982); J.L. v. Parham, 412 F.Supp.
112, 140 (1976), rev'd on other grounds, 442 U.S. 584
(1979). In view, the plaintiffs effective access to
the courts rights should permit this court to grant the
relief requested without requiring the posting of
security.

### CONCLUSION

Wherefore, plaintiffs request the following relief:

A) to be issued adequate writing pens;

B) Order plaintiffs be afforded attorney calls as
needed upon request to officials separate from their
"earned" personal phone calls as practiced uniformly
by the DOC.

Respectfully Submitted,

Tony B. Gaskins, Pro se
MCI-Cedar Junction
P.O. Box 100
South Walpole, Ma. 02071

Dated: 9/1/05

### CERTIFICATE OF SERVICE

I, Tony B. Gaskins, certify that I caused a copy of the foregoing
to be served on: David J. Rentsch, Counsel, Legal Division, Department
of Correction, 70 Franklin Street, Suite 600, Boston, Ma. 02110-1300,
by first class mail, postage prepaid.

Tony B. Gaskins, Pro se

Dated: 1/1/05



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*

*Department of Correction*
*M.C.I. Cedar Junction   at Walpole*
*P.O. Box 100*
*South Walpole, Massachusetts  02071*

*Tel: (508) 660-8000   Fax: (508) 660-8009*
*www.mass.gov/doc*



Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Edward A. Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James Bender
*Acting Deputy Commissioner*

David Nolan
*Superintendent*

To:     All 10 Block inmates

From:  Lisa Mitchell, Deputy of Operations for Special Management Units

Date:   November 26, 2004

**Re:    Issuance of security flex pens**

Effective immediately, all inmates being housed in 10 block will no longer be issued or be able
to retain a hard plastic writing pens. Any hard plastic writing pen will be considered contraband
and documented as such accordingly. Inmates housed in 10 block will be allowed to purchase
security flex pens through the canteen. Retention of hard plastic writing pens while housed in
Ten Block may result in disciplinary action.

c.  Superintendent David Nolan
    Deputy Robert Soares
    DOS Robert Drake
    Mary Stowe Treasurer
    ALL Captains
    file

Ex. A

M-1

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 01-11910-RWZ

### LLOYD MATTHEWS

v.

### PETER ALLEN, et al.

### ORDER

February 28, 2005

ZOBEL, D.J.

Plaintiff moves yet, again, for paper and pens to carry on his litigational activities. Defendants oppose.

Paper (# 109 on the court's docket). Plaintiff asks for an order that defendants provide him with white, lined paper 8 ½ by 11", instead of the yellow larger size he has been receiving. He appends to his pleading a letter from the Clerk of the Massachusetts Superior Court insisting that he submit letter-size paper. Defendants remind the court that when it last ordered them to provide plaintiff with one pad of paper per week, it did not specify any particular color or size but did state that the order applied only to this proceeding, not all of plaintiff's cases.

I now reiterate the earlier order. Defendants shall provide plaintiff with one pad of paper per week. The paper shall be white, lined and of letter size, namely, 8 ½ by 11".

Pen (# 112 on the docket). Plaintiff complains that recently defendants have

Ex. A-Q

supplied him with "soft pens" which are inadequate to the volume of legal work with

which plaintiff is engaged. Defendants offered to provide the court with a sample pen

for testing, which offer the court accepted. It has now tried the pen and finds it wanting.

Defendants may file a further response to plaintiff's motion by March 14, 2005.


DATE                              RYA W. ZOBEL
                                  UNITED STATES DISTRICT JUDGE

2

A - 3

CC. MeH.

### DEPARTMENT OF CORRECTION

### INMATE REQUEST TO STAFF MEMBER

TO: _CAPTAIN BROWN of DDU_          DATE: 3/30/05
(Name and Title of Officer)

SUBJECT:   State completely but briefly the problem which you desire assistance
(give details)

You spoke WITH Me LAST week about My Access To THE PHONE
for ATTORNEY CALLS. IN WHICH you indicated THAT you would
address My issue / COMPLAINT To MS LISA MITCHELL about My
Need To Access / THAT Need CAN NOT be RESTRICTED bASED ON
PROMULGATED RegulaTIONS 103 CMR 482. SegregaTION policy.
I SAW you Today ¿ you did NOT INFORM Me aNY ResulT of
My aTTorNey CALLS RequesT.
(Use other side of page if more space is needed)

ACTION REQUESTED:   (State exactly how you believe your request may be handled;
that is, exactly what you think should be done, and how.)
I'd Like To be permiTTed ATTorNey pHoNe CALLS as I
Need ¿ To HAVE My RequesTed uNIMpeded as RegulaTory
policy allows. uNdER policy you HAVE 5 days To Respond
bACk IN WRITING.
NAME: MAC HudSoN                          No.: W 48494
Work Assignment:                    Living Quarters: C-2 #146

NOTE:  If you follow instructions in preparing your request, it can be
disposed of more promptly and intelligently.   You will be interviewed, if
necessary, in order to satisfactorily handle your request.   Your failure to
specifically state your problem may result in no action being taken.

DISPOSITION:   (Do not write in this space)                 DATE:

A phone call or letter from Attorney is
Required For Attorney calls outside
privileged stipulations.
                                    Capt. Brown
                                         4/5/05

B - 1.

**JOHN J. BARTER**
ATTORNEY AT LAW
THIRD FLOOR
83 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02110-3711
(617) 367-2545
FAX (617) 523-7554

April 12, 2005

David Nolan
Superintendent
MCI Cedar Junction
PO BOX 100
South Walpole, MA 02071

RE:   Commonwealth v. Tony B. Gaskins,
      Essex No: 91-CR-18642
      SJC Single Justice No: SJ-2004-0456

Dear Mr. Nolan:

I represent Tony B. Gaskins on proceedings that are
currently pending before the Essex County Superior Court and the
Supreme Judicial Court for Suffolk County. I have been appointed
by the court to represent Mr. Gaskins through the Committee for
Public Counsel Services.

Mr. Gaskins is an inmate at MCI Cedar Junction, and it is my
understanding that he has been classified to the DDU. I have
been advised that Mr. Gaskins is not being allowed to call me to
discuss his pending cases. These pending cases relate to
important ongoing criminal matters and they need to be addressed
on a timely basis. It has now been several days since I have
heard from Mr. Gaskins, and it is difficult to keep in contact
with him if he is being denied access to the telephone.

If there is a written DDU policy prohibiting or restricting
Mr. Gaskins from contacting counsel on ongoing criminal matters
by telephone please send me a copy of any such written policy.
Please let me know what must be done to permit Mr. Gaskins to
contact me by telephone. I hope that you can take steps to
restore Mr. Gaskins' ability to contact me promptly.

Thank you in advance for your cooperation.

Sincerely,

John J. Barter

JJB/ps
TG041204.let

B-11



**STERN**
**SHAPIRO**
**WEISSBERG**
**& GARIN** LLP

attorneys at law

Max D. Stern
Jonathan Shapiro
Lynn G. Weissberg
Patricia Garin
Martin E. Levin
Kenneth M. Resnik
Lillian Hirales

May 31, 2005

**Attorney-Client Correspondence**

Tony Gaskins
MCI Cedar Junction
P.O. Box 100
South Walpole, MA 02071

Dear Tony:

I received your letter today and called both the superintendent's office and the DDU. I was assured by both persons that attorneys do not have to call the Superintendent's office to get placed on a prisoner's phone list. Both told me that all that is required is that "the inmate place your name on his list." Do you have the name of the C.O.(s) that told you about this alleged "policy?" I will call him or them personally and inquire about the new policy.

Sorry. Let me know.

Very truly yours,

Patricia Garin

PG/jah

UNITED STATES COURT
FOR THE
DISTRICT OF MASSACHUSETTS

ZAKARY BUSH, ET.AL.
        PLAINTIFFS

        VS

KATHLEEN DENNEHY, ET.AL.
        DEFENDANTS

CIVIL ACTION
NO. 05-11230-JLT

DECLARATION OF ZAKARYA BUSH
IN SUPPORT OF PLAINTIFFS MOTION
FOR T.R.O AND PRELIMINARY INJUNCTION

I, ZAKARYA BUSH, HEREBY DECLARE THAT,

1) THE DEFENDANTS, ON OR ABOUT 11/26/04 CONFISCATED ALL PENS (REGULAR) FROM 10 BLOCK AND D.D.U PRISONERS, DUE TO AN "ISOLATED" INCIDENT UN-RELATED TO ANY OF THE NAMED PLAINTIFFS AND RE-ISSUED ALL SEGREGATION PRISONERS WITH "RUBBER PENS" CALLING THEM "SECURITY PENS."

2) THE NEW "RUBBER PENS" ARE COMPLETELY INADEQUATE, AND ARE ONLY GOOD FOR TO SIGN ONES NAME. IT IS VERY DIFFICULT TO WRITE WITH AND INCAPABLE OF DRAFTING EXTENSIVE "LEGIBLE" PLEADINGS.

③ IN ORDER FOR ME TO DRAFT THIS DECLARATION, I HAD TO SERIOUSLY ALTER THE PEN, RENDERING IT CONTRABAND TO GET IT TO WRITE SOMEWHAT EFFECTIVELY.

④ AND THE DEFENDANT'S CANNOT PLEAD "SECURITY" BECAUSE THESE "RUBBER PENS" CAN BE USED EFFECTIVELY AS A WEAPON JUST AS A "PROPER PEN".

⑤ WHEN I FIRST ENTERED D.D.U. THE SUPERINTENTDANT HAD A PLO POLICY THAT ALL ATTORNEY PHONE CALLS MUST BE EARNED THIS STILL POLICY.

⑥ I AM NOT ALLOWED TO CALL MY ATTORNEY UNLESS I HAVE AN EARNED "PHONE SLIP", WHICH IS ONLY A (MAXIUM) OF 4 A MONTH WHICH ALSO MUST BE UTILIZED TO MAKE PERSON CALLS.

⑦ I AM NOT ALLOWED TO CALL MY ATTORNEY ON CERTAIN DAYS OR THE TIMES NEEDED TO CATCH HIM AT THE OFFICE.

⑧ I AM ONLY ALLOWED TO CALL MY ATTORNEY DURING DAYS AND TIMES MANDATED BY THE SUPERINTENTDANT, WHEN "EARNED" PHONE CALLS ARE ALLOWED TO BE EXERCISED.

⑨ IT IS NEXT TO IMPOSSIBLE FOR ME TO CONTACT MY LAWYER DURING THE EARLY MORNING HOURS, WHICH IS THE ONLY TIME TO REACH HIM AT HIS OFFICE.

10 IN ORDER TO MAKE AN ATTORNEY CALL I AM REQUIRE TO WRITE A LETTER TO THE SUPERINTENDANTS OFFICE AND REQUEST PERMISSION TO MAKE SUCH A CALL. THIS CAN TAKE MORE THAN A WEEK TO RECIEVE AN ANSWER, IF ANY IS RECIEVED AT ALL.

11 IF THIS REQUEST IS APPROVED I AM SUBJECTED TO WAIT FOR THE PHONE TO BE BROUGHT TO MY CELL AT THE OFFICER'S LEISURE WHENEVER HE CHOOSES TO DO SO. IF THE ATTORNEY IS NOT IN THE OFFICE AT THE TIME THIS CALL IS PLACED AND CANNOT GET THRU, I HAVE TO REPEAT THIS WHOLE PROCESS OVER AGAIN TO TRY ANOTHER TIME, WHICH CAN TAKE ANOTHER WEEK TO BE PROCESSED AND I AM SUBJECTED TO THE SAME HANDLING OF THE CALL.

12 FOR THE ABOVE STATE REASONS, THIS COURT SHOULD GRANT MY MOTION FOR T.R.O AND PRELIMINARY INJUNCTION.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

DATE 7/3/05

Zakarya Bush
ZAKARYA BUSH
P.O. BOX 100
S. WALPOLE, MA 02071

United States District Court
for The District
of Massachusettes

Michael T Keohane et.al
         Plantiffs
         VS
Kathleen Dennehy, et.al
         Defendants

Civil action
No. 05-11230-JLT

Declaration of Michael T Keohane
In Support of Plantiffs Motion
for T.Ro And preliminary injunction

I, Michael T Keohane, Hereby Declare That,

① The Defendants, on or about 11/26/04 Confiscated all pens (Regular) from The 10 block and DDU Prisoners, Due to an "isolated" Incident Un-Related to any of The named Plantiffs and Re-issued all Segregation Prisoners with "Rubber Pens" Calling Them "Security Pens".

② The New "Rubber Pens" are Completely Inadeqvate, and are only Good to Sign ones name. It is very difficult to write with And incapable of drafting extensive "legible" pleadings.

③ In order for me to draft This Declaration, I had to Seriously Alter The pen, Rendering It Contraband to get it to write Somewhat effectively.

2

(4)   And The Defendants Cannot plead "Security" Because These "Rubber Pens" Can be used effectively as a weapon Just as a "Proper Pen".

(5)   When I entered into The DDU I learned The Superintendent had mandated a policy of attorney phone calls needing to be earned by Good behavior. This is still The Current policy, effectively limiting me to access with my attorney to discuss my current murder appeal pending in The SJC.

(6)   I am not allowed to Call my attorney unless I have an earned "Phone Slip", which is only a (Maximum) of 4 a Month which also must be utilized to Make personal Calls.

(7)   I am not allowed to Call my attorney in certain days or The times needed to Catch her at The office.

(8)   I am only allowed to Call my attorney during days and times mandated by The Superintendant, when "earned" phone calls are allowed to be exercized.

(9)   It is next to impossible for me to Contact my lawyer during The early morning hours, which is The only time to reach her at her office.

10. In order to Make an attorney call I am required to write a letter to the superintendant's office and request permission to Make such a call. This can take More than a week to recieve an answer, if any is recieved at all.

11. If this request is approved I am subjected to wait for the phone to be brought to My cell at the officers leisure whenever he chooses to do so. If the attorney is not in the office at the time this call is placed and cannot get thru, I have to repeat this whole process over again to try another time. Which can take another week to be processed and I am subjected to the same handling of the call.

12. for the above stored reasons, this court should grant my Motion for T.R.O and preliminary injunction.

Signed under the pains & penalties of perjury.

Dated 6/30/05

Michael T Kochare
MCI - Cedar Junction
P. Box 100
J. Walpole Ma 02071

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

C.A. No. 05-11230-JLT.

TONY B. GASKINS, ET. AL.

V.

KATHLEEN DENNEHY ET. AL.
Defendants

DECLARATION IN SUPPORT OF PLAINTIFFS
APPLICATION FOR A TRO OR / ALTERNATIVELY
P. I. RELIEF

I, MAC HUDSON declares UNDER THE pains and penalties of
PERJURY:

1.  AS SET OUT IN VERIFIED COMPLAINT. ON OR about 11/26/04.
Defendants confiscated all Regular pens in segregation units at
MCI-CS arising from an isolated incident unrelated to any of the
Plaintiffs, and Re-issued SMALLER Rubber pins flexible. See Ex. A-1
attached Posted Notice and Ex. G WRITING pen issued for Court's
examination.

2.  THE New pens are only useful to sign My Name and incapable
of drafting legible extensive OR Short pleadings, Motions, grievances
OR Letters. I have Never used the Regular PRIOR issued pens
improperly while confined in Segregation before the Change.

3.  I have a criminal appeal and several Civil appeals and Civil
cases in Federal and State Court pending. Ex. B Record of pending cases.
which the present pens are obstructing me from making timely filings
effectively.

4. IN ORDER TO USE THE PEN PRESENTLY, I MUST CONSTRUCT THE PEN IN THE CENTER IN ORDER TO STABLIZE IT FOR WRITING. THE METHOD IS CONSIDERED CONTRABAND, LEADING TO CONFISCATION OF THE ALTERED PEN. ONCE STABLIZED, THE PEN IS DIFFICULT TO GRIP, INJURING MY FINGERS TO DO ANY DRAFTING. THE PENS ALSO LEAK, SKIPS AFTER A FEW TIMES OF USAGE ON MOST OCCASIONS.

5. THE UNIFORM PRACTICE OF ATTORNEY CALLS IN THE DEPARTMENT OF CORRECTION SEGREGATION UNITS IS: UPON A PRISONERS REQUEST FOR AN ATTORNEY CALL, THE ATTORNEY NUMBER IS VERIFIED BY IMMEDIATE STAFF AND THE CALL IS ISSUED. ATTORNEY CALLS ARE BASED ON THE PRISONER OR ATTORNEY NEEDS TO COMMUNICATE OR THE PRISONERS NEED TO CALL THE COURTS.

6. THE UNIFORM PRACTICE IS THAT NO ONE HAS THE AUTHORITY TO SUSPEND OR CURTAIL A PRISONERS ATTORNEY CALLS. ATTORNEY CALLS AND DISCRETIONARY PRIVILEGE CALLS ARE RECOGNIZED DIFFERENTLY. A SUPERINTENDENT CAN LIMIT A SEGREGATED PRISONERS PERSONAL CALLS BUT HE HAS NO AUTHORITY TO LIMIT CALLS MADE TO THE COURT OR ATTORNEY. UNLESS AN EMERGENCY SECURITY ISSUES ARISES e.g. LOCK DOWN THAT PROHIBITS THE CALL FROM BEING PROCESSED.

7. DDU. HAS NO DISTINCTION BETWEEN EARNED PRIVILEGE CALLS OR CONSTITUTIONALLY PROTECTED CALLS TO THE COURT OR ATTORNEYS. THE EARNED CALLS IN DDU AS DELINEATED IN THE ORIENTATION MANUAL ATTACHED, AS EX. F    PRISONERS EARN ONE CALL A MONTH TO MAKE PERSONAL CALLS TO FAMILY AND FRIENDS BASED ON GOOD BEHAVIOR. A PRISONER EARNS AN ADDITIONAL CALL EACH MONTH PREDICATED ON THE SAME PRINCIPLE UNTIL HE REACHES A MAXIMUM OF 4 PERSONAL CALLS.

8. THE PRACTICING POLICY WAS UNLESS THE NEED WAS DEMONSTRATED BY AN ATTORNEY REQUEST VIA MAIL OR PHONE CALL TO THE SUPERINTENDANTS OFFICE, A PRISONER WOULD NOT BE ABLE TO MAKE A ATTORNEY CALL IN DDU. I HAD MY ATTORNEY GREG SCHUBERT, BENJAMIN GOLDBERGERS MS EVA CLARK, WHO REPRESENT ME ON SEPRATE ISSUES, CONTACT DEFENDANT NOLAN VIA MAIL INDICATING MY NEED TO CONFER BY PHONE REGULARLY. SEE EX. B 2-10

9. I was granted this ability to make calls upon my request to immediate staff to my attorneys and court. However, on May. 17, 2005 Defendant NOLAN changed the policy requiring me to use my personal earned phone slips to communicate with my family on attorney calls. I cannot request for additional calls via attorney although the need is demonstrated until the earned calls slips are depleted.

10. As a result of the change in policy and no distinguishment between earned privilege calls and attorney calls, I have been unable to confer with counsel's assistance Ms. Jean Fielding on my direction to oppose the states further appellate review application on my criminal case. See Letter from attorney Fielding attached. which remains a present problem as well as communicate with stand by counsel Ms. Eva Clark on writ of Habeus petition in Hudson V. Bender, Suff. Sup. Ct. CA. No.          and counsel Benjamin Goldberger on Hudson V. Dennehy, USDC. CA. NO.

11. I am being presently harmed by the denial of attorney calls access and inadequate pens. I need the courts immediate introvention until such a time the case can be heard on the merits.

   For the above reasons, Hudson's request should be granted.
   Signed on this 22nd day of June 2005.

                                    Resp. signed
                                    Mac Hudson

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT   OF   MASSACHUSETTS

TONY B. GASKINS, et. al                    C.A.NO. 05-11230-JLT;
        V                                  ~~~~~~~~~~~~~~
KATHLEEN DENNEHY, et. al
DEFENDANTS

Declaration IN SUPPORT Of Plaintiffs
Motion For Temporary Restraining Order
Or/Alternatilley Preliminary Injunction

        I  Orrin F. Simmons declares  Under the
Penalties Of Perjury

        1. As set out in the Complaint, on or a-
bout NOV. 26th, 2004, the defendents collected/confi-
scated all/any regular pens wich they issued in the
Detention Disciplinary Unit (D.D.U) at MCI Cedar Junction
arising from a isolated situation/issue not related to
any of the Present Plaintiffs; And did re-issue smaller
Rubber Pens wich are flexible and difficult to use.

        2. The new Pens are not usuable when (one)
Plantiff decides to write out a lengthy letter or at-
teme to draft out a ledgible legal document or any-
thing contrary. MY Use of the regular issued Pen has

- 2 -

Never been questionable nor have I improperly made use of the regular issued pen(s) prior to the change which occured on the above listed date.

3. My communication with the courts, family members and associated via U.S. Mail have been strained do to my difficulty in use of the issued RUBBER PEN(S). In order to get the maximum use of the RUBBER PEN(S), Plantiff has resorted to altering Pen by re-inforcing it which several lengths of wet sheets of paper and wrapping around the length of the pen to prevent the occasional bending. This has caused blistering or finger due to the unfamilarness of the bulked up pen.

4. Constant removal of pen top in order to blow through the opposite end to force ink flow to tip is required after just a few uses of the rubber pen(s) after issued. This has caused a unnecessary mess of clothing and Plantiff desk where writing is done.

5. THE current practice of Attorney phone call privilleges are being limited illegally by officers in the Department Detention Unit (D.D.U.) due to a policy layed out by superintendent D. Nolan (defendant). To my knowledge Attorney calls are based on a prisoners or Attorney need to con-

- 3 -

municate or the prisoners need to access the
Court(s) through ones attorney. Being placed in
a Segregation Unit / DDU does not give Defendant(s)
the authority to suspend / diminish a Prisoners
Attorney Phone Calls, when call is being placed
during regulated legal Praticeng hours (9am-5pm)
MON - FRI _____

6. The D.D.U. has no set up practice which
seperates earned Personal Phone calls which is a Pri-
Viledge and legal / Attorney Phone calls that are
constitutionally gaurenteed. This issue was ad-
dressed and grieved by Plaintiff (see attached).
The defendent has changed the Policy of Attorney
Phone Calls several times Prior and after the grie-
Vence was received, denied and appealed. . . De-
fendant Nolan is the Superintendent at MCI cedar Junction
and to date continues to change the Attorney Phone call
Policy weekly.

7. As a result of these changes in the
Policy so frequently it is impossible for Plaintiff
to obtain the Phone in the A.M. hours to make a
legal call due to Staff asigned to the D.D.U
not knowing which Policy is on line at what
time. Said Staff cant distinguish which Policy the
defendent is instituting on which day.

8. For all The above reasons the Plantiff Prays the court will grant this motion and a Preliminary Injunction.

Signed Under the Pains and Penalties of Perjury _____

DATE  6/20/05

ORRIN Simmons

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

TONY B. GASKINS, ET AL.,
          PLAINTIFFS,

v.

KATHLEEN DENNEHY, ET AL.,
          DEFENDANTS.

CIVIL ACTION
No. 05-11230-JLT

DECLARATION OF TONY B. GASKINS
IN SUPPORT OF PLAINTIFFS MOTION
FOR T.R.O. AND PRELIMINARY
INJUNCTION

I, TONY B. GASKINS, HEREBY DECLARE, THAT:

1. THE DEFENDANTS, ON OR ABOUT 11/26/04, CON-
FISCATED FROM TEN BLOCK AND DDU PRISONERS
"PROPER PENS" DUE TO AN "ISOLATED" INCIDENT UN-
RELATED TO ANY OF THE NAMED PLAINTIFFS AND
RE-ISSUED ALL SEGREGATION PRISONERS WITH
"RUBBER PENS," CALLING THEM "SECURITY PENS."

-2-

2. THE NEW "RUBBER PENS" ARE COMPLETELY INADEQUATE AND ARE ONLY GOOD TO SIGN ONE'S NAME. IT IS VERY DIFFICULT TO WRITE WITH AND INCAPABLE OF DRAFTING EXTENSIVE "LEGIBLE" PLEADINGS.

3. IN ORDER FOR ME TO DRAFT THIS DECLARATION, I HAD TO SERIOUSLY ALTER THE PEN TO GET IT TO WRITE SOMEWHAT EFFECTIVELY.

4. AND THE DEFENDANTS CANNOT PLEAD "SECURITY" BECAUSE THESE "RUBBER PENS" CAN BE USED EFFECTIVELY AS A WEAPON JUST LIKE A "PROPER PEN."

5. WHEN I FIRST ENTERED DDU, THE SUPERINTENDENT HAD A POLICY THAT ALL ATTORNEY PHONE CALLS MUST BE EARNED. THIS IS STILL THE POLICY.

6. I WAS NOT ALLOWED TO CALL MY ATTORNEY UNLESS I HAVE A PHONE SLIP (WHICH ARE EARNED).

-3-

7. I FILED GRIEVANCES, WROTE A LETTER TO LISA MITCHELL AND COMPLAINED TO CAPTAIN SCOTT BROWN.

8. I WAS INFORMED BY SCOTT BROWN THAT I MUST EITHER SHOW A LETTER FROM MY LAWYER INDICATING HE NEEDS ME TO CALL OR MY LAWYER MUST CALL THE SUPERINTENDENT SEEKING HIS PERMISSION FOR ME TO CALL.

9. ON APRIL 12, 2005, JOHN J. BARTER, MY ATTORNEY WHO REPRESENTS ME IN MY NEW TRIAL PROCEEDINGS COMMONWEALTH V. GASKINS, No. 91-EVCR-01642; WOMACK V. GASKINS, SUPREME JUDICIAL COURT No. 05-0996, WROTE SUPERINTENDENT NOLAN INDICATING THAT HE HASN'T SPOKEN TO ME IN QUITE A WHILE AND THAT HE NEEDS TO TALK WITH VIA TELEPHONE BECAUSE THE "IMPORTANT ONGOING CRIMINAL MATTERS... NEED TO BE ADDRESSED ON A TIMELY BASIS."

10. FOR A VERY SHORT PERIOD OF TIME, I WAS ALLOWED TO CALL MY ATTORNEY, AS NEEDED,

– 4 –

WEEKLY JUST BY SHOWING THE LETTER.

11. THEN DAVID NOLAN INSTITUTED A POLICY THAT ALL ATTORNEY CALLS CAN ONLY BE MADE PER HIS APPROVAL. MEANING MY ATTORNEY MUST CALL "EVERYTIME" HE WANTS TO TALK TO ME. NO EXCEPTIONS.

12. ON JUNE 21, 2005, I SUBMITTED A PHONE SLIP TO CALL MY ATTORNEY AND WAS DENIED BECAUSE ALL ATTORNEY CALLS MUST BE FIRST APPROVED BY THE SUPERINTENDENT. I FILED A GRIEVANCE ON THIS.

13. DUE TO THE LACK OF AN ADEQUATE LAW LIBRARY, NO ACCESS TO CALL MY ATTORNEY AND BEING PROVIDED WITH DEFECTIVE "RUBBER PENS," HAS REALLY HINDERED MY ABILITY TO EFFECTIVELY LITIGATE MY PENDING CIVIL AND CRIMINAL CASES.

14. THE CASES I HAVE PENDING ARE: COMMONWEALTH V. GASKINS, ESSEX SUPERIOR COURT NO. 91-CR-018642 (MOTION FOR NEW TRIAL, BORENSTEIN, J.); WOMACK V. GASKINS, SUPREME JUDICIAL COURT

-5-

No. 05-09496 (INTERLOCUTORY APPEAL BY
LEO WOMACK IN Com V. GASKINS, No. 91-ENCR-01862
ORDER BY BORENSTEM, J. COMPELLING WOMACK
TO TESTIFY); GASKINS, ET AL. V. ALLEN, ET
AL., No. 04-SUCV-00883-D (PENDING APPEAL);
GASKINS, ET AL. V. DENNEHY, ET AL., No. 05-SUCV-
0257-D; GASKINS V. DENNEHY, ET AL., No.
04-SUCV-00717-D; GASKINS V. UMASS COR-
RECTIONAL HEALTH SERVICES, ET AL., U.S.D.C. No.
05-CV-10853-GAO; GASKINS V. NOLAN, ET AL.,
U.S.D.C. No. 05-CV-10630-JLT; GASKINS, ET AL
V. DENNEHY, ET AL., MIDDLESEX SUPERIOR
COURT No. 05-CV-01746-K.


15. I CANNOT EFFECTIVELY MEET
REQUIRED FILING DEADLINES IN A LOT
OF THESE CASES DUE TO THE BARRIERS
CONSTRUCTED BY THE DEFENDANTS. I HAVEN'T
BEEN HURT YET BY THEIR ACTIONS, BUT
ITS JUST A MATTER OF TIME BEFORE I WILL.


16. FOR THE ABOVE-STATED REASONS, THIS
COURT SHOULD GRANT OUR MOTION FOR T.R.O.

-6-

AND PRELIMINARY INJUNCTION.

SIGNED UNDER THE PAINS AND PENALTIES
OF PERJURY.

AFFIANT,

DATED: 6/23/05

Tony B. Gaskins

TONY B. GASKINS, PROSE
MCI - CEDAR JUNCTION
P.O. BOX 100
SOUTH WALPOLE, MA. 02071

United States District Court
for The
District of Massachusetts

JEFFREY M. HARDY , et .al

Plaintiffs.

✓

KATHLEEN DENNEHY , Et .al .

Defendants

CIVIL ACTION

NO. 05, 11230 . JLT

Declaration of Jeffrey M. Hardy
In support of Plaintiffs Motion
For T.R.O, And Preliminary Injunction

I Jeffrey Hardy , Hereby Declare, THAT:

1. THE DEFENDANTS , ON OR ABOUT 11/26/04 CONFISCATED ALL PENS (REGULAR)
FROM TEN BLOCK AND D.D.U. PRISONERS. DUE TO AN ISOLATED
INCIDENT UN-RELATED TO ANY of THE NAMED PLAINTIFFS AND
RE-ISSUED ALL SEGREGATION PRISONERS WITH "RUBBER PENS"
CALLING THEM "SECURITY PENS.

2. THE NEW "RUBBER PENS" ARE COMPLETELY INADEQUATE, AND ARE ONLY GOOD TO SIGN ONE'S NAME, IT IS VERRY DIFFICULT TO WRITE WITH AND INCAPABLE OF DRAFTING EXTENSIVE "LEGIBLE" PLEADINGS.

3. IN ORDER FOR ME TO DRAFT THIS DECLARATION, I HAD TO SERIOUSLY ALTER THE PEN TO GET IT TO WRITE SOMEWHAT EFFECTIVELY.

4. AND THE DEFENDANT'S CANNOT PLEAD "SECURITY" BECOUSE THESE "RUBBER PENS" CAN BE USED EFFECTIVELY AS A WEAPON JUST LIKE A "PROPER PEN".

5. WHEN I FIRST ENTERED O.O.U THE SUPERINTENDENT HAD A POLICY THAT ALL ATTORNEY PHONE CALLS MUST BE EARNED. THIS IS STILL THE POLICY.

6. I WAS NOT ALLOWED TO CALL MY ATTORNEY UNLESS I HAVE A PHONE SLIP (WHICH IS EARNED)

7. I WAS ALSO NOT ALLOWED TO CALL MY ATTORNEY ON CERTAIN DAYS.

8. I WAS ONLY ALLOWED TO CALL MY ATTORNEY ON DAY'S IN WHICH MY "EARNED" PHONE CALLS ARE SCHEDULED.

9.  IT IS ImpossIBLE FOR ME TO CONTACT My ATTORNEY IN THE
AM HOURS. WHICH IS THE ONLY TIME TO CONTACT HER.

10.  IN ORDER TO MAKE AN ATTORNEY CALL I'm REQUIRED TO
WRITE TO THE SUPERINTENDENT'S OFFICE AND REQUEST
PERMISSION TO MAKE SUCH CALL. WHICH TAKES AT LEAST
(1) WEEK TO RECIEVE A REPLY (IF AT ALL)  IF THE
SUPERINTENDANT'S OFFICE DOES APPROVE THIS ATTORNEY
CALL THEN THE PHONE IS BROUGHT TO My CELL AT
WHATEVER TIME THE OFFICER CHOOSES. AND IF My
ATTORNEY ISN'T IN THE OFFICE OR I CANNOT GET THROUGH
THAN I HAVE TO REPEAT THE PROCESS OF WRITEING THE
SUPERINTENDANTs OFFICE TO REQUEST ANOTHER CALL, AND
WAIT ANOTHER WEEK AGAIN FOR A REPLY (IF I RECIEVE ONE
AT ALL)

11.  FOR THE ABOVE STATED REASONS. THIS COURT SHOULD
GRANT OUR MOTION FOR T.R.O  AND PRELEMINARY INJUNCTION.

SIGNED UNDER THE PAINS AND PENALTIES
OF PERJURY.

DATED 6:23.05

AFFIANT:

Jeffrey M. Hardy
JEFFREY M. HARDY
MCI-CEDAR- JUNCTION
P.O. BOX 100
SouTH WALPOLE , MASS 02071

United States District Court
for the
District of Massachusetts

Samuel Correa, et. al
     Plaintiffs.

     ✓

Kathleen Dennehy, et. al.
     Defendants

Civil Action
No. 05, 11230, JLT

Declaration of Samuel Correa
In Support of Plaintiffs motion
for T.R.O. and Preliminary Injunction

I Samuel Correa, Hereby Declare, That:

1. The Defendants, on or about 11/26/04 confiscated all pens (regular) from Ten block and D.DU. Prisoners. Due to an Isolated Incident un-related to any of the named Plaintiffs and re-issued all Segregation Prisoners with "Rubber Pens" calling them "Security Pens."

2. The new "Rubber Pens" are completely Inadequate, and are only Good to sign one's name. It is very difficult to write with and Incapable of Drafting Extensive "Legible" Pleadings.

3. In order for me to Draft this Declaration, I had to seriously alter the Pen to get it to write somewhat Effectively.

4. And the defendant's cannot Plead "security" Because these "Rubber Pens" can be used effectively as a weapon just like a "Proper Pen"

5. When I first entered DDU the superintendent had a Policy that all attorney phone calls must be earned. This is still the Policy.

6. I was not allowed to call my Attorney unless I have a phone slip (which is earned.)

7. I was also not allowed to call my attorney on certain days.

8. I was only allowed to call my attorney on day's in which my "Earned" phone calls are scheduled.

9. It is impossiable for me to contact my attorney in the Am hours, which is the only time to contact her.

10. In order to make an attorney call I'm required to write to the superintendent's office and request permission to make such call, which takes at Least (1) week to recieve a reply (If at All) If the Superintendent's office Does Approve this Attorney call then the Phone is Brought to my cell at whatever time the office chooses, And If my Attorney isn't In the office or I cannot get through than I have to repeat the process of writting the Superintendent's office to request another call, and wait another week again for a reply (if I recieve one at all.)

11. For the above stated reasons, This court should Grant our motion for T.RO and Preliminary injunction

Signed under the Pains and Penalties of Perjury,

Dated: 6,23,05

AFFiant!

Samuel Correa
Samuel Correa
mci-cedar-Junction
P.O. Box 100
South Walpole, MA, 02071

I, Che Barnes - W52380, would like to give this Affidavit in regards to myself and other inmates being denied Access to the phone inorder to contact our Attorneys I give this, under my own free will

On monday, Aug 22nd 2005... I was approached by %o lapham and informed that, a legal phone call was scheduled for me by someone in my Attorneys office for the following day, Aug. 23rd 2005, At 9am. He gave me a piece of paper to varify this, and even signed it so I could give to the officers the next day.

On tuesday morning, Aug 23rd 2005... I informed %o Amaralt that I was suppose to get a phone call to my attorney at 9am. (We spoke At 830am). At 9am... he came down to my cell, and informed me that, %o Deluca told him not to give me the phone because it wasn't a phone day I again, told him (%o Amaralt) that it was an approved legal phone call, and I gave him the paper that %o lapham signed and gave to me. %o Amaralt gave %o Deluca the slip, and I informed %o Deluca that I needed to call my Attorney before he leaves the office. At this time, %o Deluca yelled on to the her that, it wasn't a phone day and I wasn't getting the phone. I tried to say that, my lawyer called and I was entitled to the phone, regardless if it was a phone day or not - %o Deluca then said that he would bring me the phone, whenever he 'felt like it'.

I was finally brought the phone At 930am... And when I called my Attorney, he had left his office. So, in exponce to %o Delucas Actions, and his blatant disregard of the rules and policies concearning legal phone calls... I was denied the chance to speak with my Attorney.

Sworn under the pains and penalty of perjury, written in honesty The events described in this Affidavit took place while I was in Mci cedar junction, 10 block.

Sincerely

Che Barnes

Che Barnes

AFFIDAVIT OF JOHN CARILLO

I, JOHN CARILLO, HEREBY DEPOSE AND STATE
THE FOLLOWING, THAT:

1. SINCE I'VE BEEN IN DDU SOME 5 1/2 YEARS,
I HAVE BEEN DENIED LEGAL CALLS AND ACCESS TO
THE COURTS.

2. MOST OF THE TIME THESE PEOPLE (AT THE
PRISON) HAVE PLACED BLOCKS ON SOME OF MY
ATTORNEY PHONE NUMBERS.

3. IN FACT, THERE ARE ATTORNEYS ON MY PHONE
LIST, WHO HAVE BEEN ON FOR MONTHS AND YEARS,
I HAVE NOT BEEN ABLE TO CONTACT THROUGH PHONE
OR MAIL.

4. AND WHENEVER I COMPLAIN TO THESE PEOPLE,
THEY TELL ME TO WRITE THE ATTORNEY, BUT WHEN
I DO, THE LETTERS NEVER GET OUT.

5. I HAVE SOME DOCUMENTATIONS TO BACK UP
MY CLAIM.

SIGNED UNDER THE PAINS AND PENALTIES OF
PERJURY.

AFFIANT,
John Carillo

JOHN CARILLO
MCI-CEDAR JUNCTION
P.O. BOX 100
SO. WALPOLE, MA. 02071

DATED:
7-13-05

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

**Name**    SIMMONS ORRIN      **Institution**   MCI CEDAR JUNCTION

**Number**    W64291    **Housing**   DDU

**Appeal Date**   30-APR-2005    **Date Of Grievance**   31-MAR-2005

**Appeal Received Date**   02-MAY-2005

**Appeal**    SEE ATTACHED

**Remedy Requested**    SEE ATTACHED

**Staff Recipient**    Sullivan Daniel CO II

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date**   02-MAY-2005    **Decision Date**   01-JUN-2005    **Decision**   DENIED

**Decision By**    Nolan David F SUPERINTENDENT

**Reasons**

**Signature**

I concur with the IGC. Be advised, in accordance with the Department Disciplinary Unit Inmate Handbook, DDU inmates will earn telephone privileges by remaining disciplinary report free. The maximum number of phone slips you can earn in a one-month period is 4. These phone slips are to be used for attorney calls as well as personal calls. In addition, in emergency situations, your attorney may contact the Superintendent's Office to request a phone call from you.

6/21/05 - In accordance with 103 CMR 491, I have reviewed grievance/grievance appeal #9504.

Please be advised that I support the Superintendent's decision to deny your grievance, as I concur with the institutional summary of findings.

Kristie Ladouceur
Department Grievance Coordinator

   **Date**

## INMATE RECEIPT

**Inmate's Name**   SIMMONS ORRIN      **Institution**   MCI CEDAR JUNCTION

**Number**    W64291      **Appeal Received Date**    02-MAY-2005

**Staff Recipient**    Sullivan Daniel CO II

**Superintendent's Signature**

# DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| Name | GASKINS TONY | | | Institution | MCI CEDAR JUNCTION | | |
|------|--------------|--|--|-------------|-------------------|--|--|

| **Number** | W52145 | **Housing** | TEN BLOCK | **Appeal Date** | 01-JUL-2005 | **Date Of Grievance** | 22-JUN-2005 |
|------------|--------|-------------|-----------|-----------------|-------------|-----------------------|-------------|
| | | | | **Appeal Received Date** | 05-JUL-2005 | | |

**Appeal**  I was and continue to be impeded from calling my attorney and I do not have to "earn" the right to call an attorney nor do I have to get permission from the superintendent to be "allowed" to call my attorney.

**Remedy Requested**  I want to see a written rule, law, or policy that states you can hinder my right to make a lawyers call. This is unconstitutional.

**Staff Recipient**  Aucoin Ann Marie  CO I

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date**  05-JUL-2005   **Decision Date**  25-JUL-2005   **Decision**  DENIED

**Decision By**  Nolan David F  DIRECTOR OF AUDIT/ COMPLIANCE

**Reasons**

**Signature**

In accordance with the Department Disciplinary Unit Inmate Handbook, DDU inmates are allowed a maximum of 4 phone calls per month if they have earned their 4 phone slips. These phone slips are to be used for attorney calls as well as personal calls. I have confirmed that you used your 4 earned phone slips prior to the date in question. Furthermore, be advised DDU telephone calls are scheduled in accordance with the DDU Inmate Handbook.

8/19/05 - In accordance with 103 CMR 491, I have reviewed grievance/grievance appeal #11456.

Please be advised that I support the Superintendent's decision to deny your grievance, as I concur with the institutional summary of findings. Inmates in DDU must earn phone slips to call their attorney as well as personal calls. Furthermore, your attorney would need to contact the Superintendent and make approriate arrangements if they require additional telephone contact with you.

*Kristie Ladouceur*
Kristie Ladouceur
Department Grievance Coordinator

**Date**

## INMATE RECEIPT

**Inmate's Name**  GASKINS TONY

**Institution**  MCI CEDAR JUNCTION

**Number**  W52145

**Appeal Received Date**  05-JUL-2005

**Staff Recipient**  Aucoin Ann Marie  CO I

**Superintendent's Signature**

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name** | SIMMONS ORRIN | | | | **Institution** | MCI CEDAR JUNCTION | |
| **Number** | W64291 | **Housing** | DDU | | **Appeal Date** | 30-APR-2005 | **Date Of Grievance** 31-MAR-2005 |
| | | | | | **Appeal Received Date** | 02-MAY-2005 | |

**Appeal**   SEE ATTACHED

**Remedy Requested**   SEE ATTACHED

**Staff Recipient**   Sullivan Daniel   CO II

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date**   02-MAY-2005      **Decision Date**   01-JUN-2005      **Decision**   DENIED

**Decision By**   Nolan David F   SUPERINTENDENT

**Reasons**

**Signature**   I concur with the IGC. Be advised, in accordance with the Department Disciplinary Unit Inmate Handbook, DDU inmates will earn telephone privileges by remaining disciplinary report free. The maximum number of phone slips you can earn in a one-month period is 4. These phone slips are to be used for attorney calls as well as personal calls. In addition, in emergency situations, your attorney may contact the Superintendent's Office to request a phone call from you.

**Date**   6/3/5

## INMATE RECEIPT

**Inmate's Name**   SIMMONS ORRIN                           **Institution**   MCI CEDAR JUNCTION

**Number**   W64291                                       **Appeal Received Date**   02-MAY-2005

**Staff Recipient**   Sullivan Daniel   CO II

**Superintendent's Signature**

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION

#9504

---

## INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| | | | | | |
|---|---|---|---|---|---|
| **Name** | SIMMONS ORRIN | | | **Institution** | MCI CEDAR JUNCTION |

| **Number** | W64291 | **Housing** | DDU | **Appeal Date** | 30-APR-2005 | **Date Of Grievance** | 31-MAR-2005 |
|---|---|---|---|---|---|---|---|

**Appeal Received Date**   02-MAY-2005

**Appeal**   SEE ATTACHED

**Remedy Requested**   SEE ATTACHED

**Staff Recipient**   Sullivan Daniel  CO II

**Signature**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DECISION BY SUPERINTENDENT

**Appeal Received Date**   02-MAY-2005   **Decision Date**   **Decision**

**Decision By**

**Reasons**

**Signature**   **Date**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## INMATE RECEIPT

**Inmate's Name**   SIMMONS ORRIN   **Institution**   MCI CEDAR JUNCTION

**Number**   W64291   **Appeal Received Date**   02-MAY-2005

**Staff Recipient**   Sullivan Daniel  CO II

**Superintendent's Signature**   *David Nolan*

ATTACHMENT "C"

## DEPARTMENT OF CORRECTION
## INSTITUTION APPEAL FORM
### FORWARD TO THE INSTITUTIONAL SUPERINTENDENT

**SECTION A**

NAME: ORRIN SIMMONS     INSTITUTION: MCI CEDAR JUNCTION

NUMBER: W64291     HOUSING UNIT: C2 #140     DATE OF INCIDENT: 3/3/05
(DDU)

APPEAL: SEE ATTACHED

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED:     SEE ATTACHED

INMATE SIGNATURE:     DATE: 4/30/05

STAFF RECIPIENT:     DATE:

DATE RECEIVED:

**SECTION B**

ASSIGNED GRIEVANCE NUMBER:

ASSIGNED INSTITUTION APPEAL NUMBER:

DECISION RENDERED:     ____APPROVED
     ____ DENIED

SUMMARY OF FINDINGS:

SUPERINTENDENT'S
SIGNATURE:     DATE:

**SECTION C**
### INMATE APPEAL RECEIPT

INMATE NAME:     INSTITUTION:

NUMBER:     DATE RECEIVED:

RECEIPTING STAFF:     TITLE:

01/05/01     491 - 14

O5 - 1558

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | | |
|---|---|---|---|---|
| **Name** | SIMMONS ORRIN | **Grievance#** 9504 | **Institution** MCI CEDAR JUNCTION | |

| **Commit No.** | W64291 | **Housing** DEPARTMENT DISCIPLINARY UNIT | **Date Of Incident** 20050331 | **Date Of Grievance** 20050331 |
|---|---|---|---|---|

**Complaint** Telephone calls to contact legal representatives such as lawyers, attorney, MCLS, PLAP etc. Staff is not allowing legal phone calls, communication unless earned slip is sued or inmate attorney calls and requests you to contact them first.

This practice is unconstitutional and is blocking an inmate's due process. Communication between inmate and attorney can not be governed by staff members of D.O.C. If attorney/legal phone calls are excessive then recourse could and should be looking towards that inmate not all.

**Remedy Requested** Discontinue this practice immediately. Will seek judicial recourse and monetary damages.

**Staff Recipient** Sullivan Daniel    CO II

**Staff Involved**

**Signature**

---

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20050402    **Decision Date** 20050427

**Signature** Sullivan Daniel    CO II

**Final Decision** DENIED

**Decision** Pursuant to 103CMR482 specifically 482.09 which states Department Disciplinary Unit or Departmental Segregation Unit- Inmates housed in these special housing units shall have telephone privileges as authorized by the Superintendent. Additionally you may access your attorney through mail correspondence as well as through attorney visits.

**Signature** _Daniel Sull_    **Date** 4/27/05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

| | | | | |
|---|---|---|---|---|
| **Name** | SIMMONS ORRIN | | **Institution** MCI CEDAR JUNCTION | |

| **Commit No.** | W64291 | **Grievance#** 9504 | **Date Received** 20050402 |
|---|---|---|---|

**Signature.** Sullivan Daniel    CO II



**Mitt Romney**
*Governor*

**Kerry Healey**
*Lieutenant Governor*

**Edward A. Flynn**
*Secretary*

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*

**Department of Correction**
**M.C.I. Cedar Junction at Walpole**
**P.O. Box 100**
**South Walpole, Massachusetts  02071**

*Tel: (508) 660-8000   Fax: (508) 660-8009*
*www.mass.gov/doc*

05 - 0720



**Kathleen M. Dennehy**
*Commissioner*

**James Bender**
*Deputy Commissioner*

**David Nolan**
*Superintendent*

## MEMORANDUM

TO: mac Hudson

FROM:    Joanne Paquin, Administrative Assistant

RE:    Grievance Appeal (Grievance # 8618 )

DATE: 2/25/05

Superintendent Nolan is in receipt of your grievance appeal.  I am returning it to you for the following reasons.
Please return your grievance package to this office after you have completed the appropriate steps.

_☑_ Must include IGC's decision and any pertinent attachments

_✓_ Must complete the attached Grievance Appeal Form

_____ IGC working on grievance, resubmit when you receive his answer

You will have until _____3/4/05_____ to re-file your appeal.

cc. file
Attachment

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM
### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | | | |
|---|---|---|---|---|---|
| **Name** | HUDSON MAC | **Grievance#** 8618 | **Institution** MCI CEDAR JUNCTION | | |
| **Commit No.** | W48494 | **Housing** TEN BLOCK | **Date Of Incident** 20050212 | **Date Of Grievance** 20050214 | |

**Complaint**  On 1-31-05 my attorney Ms. Eva Clark mailed me legal mail consisting of my DDU appeal #43495 certified receipt mail at the post office. However I did not receive my legal mail until 2-12-05. In which I signed for receipt of it. This is another example of my mail being tampered and interfered with.

**Remedy Requested**  I'd like to know why my legal mail was withheld and for my mail not to be interfered or tampered with.

**Staff Recipient**  Aucoin Ann Marie   CO I

**Staff Involved**

**Signature**

---

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received**  20050219   **Decision Date**  20050222

**Signature**  Barrett Patrick M  CO I

**Final Decision**  DENIED

**Decision**  Your Certified mail was recevied at this Institution on 2/12/05 and forwarded and signed for by you. There is no evidence to suggest that it was in any way delayed by the institution.

**Signature**   **Date**  2/22/05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

| | | | | |
|---|---|---|---|---|
| **Name** | HUDSON MAC | | **Institution** MCI CEDAR JUNCTION | |
| **Commit No.** | W48494 | **Grievance#** 8618 | **Date Received** 20050219 | |

**Signature.**  Aucoin Ann Marie   CO I

*The Commonwealth of Massachusetts*

*Executive Office of Public Safety*

*Department of Correction*

*M.C.I. Cedar Junction at Walpole*

*P.O. Box 100*

*South Walpole, Massachusetts 02071*

*Tel: (617) 727-1684  Fax: (617) 727-6571*

Jane Swift
*Governor*

James P. Jajuga
*Secretary*

Michael T. Maloney
*Commissioner*

Kathleen M. Dennehy
*Deputy Commissioner*

Peter E. Allen
*Superintendent*

April 2, 2002

Mac Hudson, W-48494
MCI-Cedar Junction
WWSU

Dear Mr. Hudson:

     I am writing in response to your two recent letters in which you allege that your outgoing mail is not reaching its destination.

     This matter was looked into and there is no evidence to substantiate that your mail is being withheld or delayed. All of your outgoing mail is processed, as long as the outside of the envelope contains your name and return address.

Sincerely,

Peter Allen
Superintendent

cc. Inmate's file
    file

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT



#6189

| | | | | |
|---|---|---|---|---|
| **Name** | HUDSON MAC | | **Institution** | MCI CEDAR JUNCTION |
| **Number** | W48494 **Housing** TEN BLOCK | | **Appeal Date** 09-OCT-2004 | **Date Of Grievance** 09-OCT-2004 |
| | | | **Appeal Received Date** 26-OCT-2004 | |

**Appeal**  My legal outgoing mail to Ms. Jean Fielding (attorney) In violation of 103 CMR 481 et. The Lt. of the unit wrote an incident report. I am being overcharged for my mail, bulk rate mailing see copy of the outside envelope addressed to Attorney Fielding, Now since the re-mailing of this envelope (legal mail) My attorney Ms. Gielding have not received my legal papers. Bulk rate on these manilla envelopes filled to capacity is only $3.72.

**Remedy Requested**  I want my 2 stamps back.

**Staff Recipient**  Aucoin Ann Marie  CO I

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**  26-OCT-2004  **Decision Date**  10-NOV-2004  **Decision**  DENIED

**Decision By**  Nolan David F  SUPERINTENDENT

**Reasons**  I concur with the IGC. The Mail Office was contacted and informed this office that all mail leaving the facility is mailed first class,
**Signature**  unless otherwise specified on the envelope. Furthermore, mail is not weighed at this facility unless the postage is paid via a purchase slip. All stamped mail is forwarded to the US Post Office for their processing. If you feel you are being overcharged, you may direct your concerns to the US Post Office.

**Date**  11/12/04

---

## INMATE RECEIPT

**Inmate's Name**  HUDSON MAC  **Institution**  MCI CEDAR JUNCTION

**Number**  W48494  **Appeal Received Date**  26-OCT-2004

**Staff Recipient**  Aucoin Ann Marie  CO I

**Superintendent's Signature**

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

#6189

| | | | | |
|---|---|---|---|---|
| **Name** | HUDSON MAC | | **Institution** | MCI CEDAR JUNCTION |
| **Number** | W48494 | **Housing** TEN BLOCK | **Appeal Date** | 09-OCT-2004   **Date Of Grievance** 09-OCT-2004 |
| | | | **Appeal Received Date** | 26-OCT-2004 |

**Appeal**  My legal outgoing mail to Ms. Jean Fielding (attorney) In violation of 103 CMR 481 et. The Lt. of the unit wrote an incident report. I am being overcharged for my mail, bulk rate mailing see copy of the outside envelope addressed to Attorney Fielding, Now since the re-mailing of this envelope (legal mail) My attorney Ms. Gielding have not received my legal papers. Bulk rate on these manilla envelopes filled to capacity is only $3.72.

**Remedy Requested**  I want my 2 stamps back.

**Staff Recipient**  Aucoin Ann Marie  CO I

**Signature**  _____

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**  26-OCT-2004    **Decision Date**  _____    **Decision**  _____

**Decision By**  _____

**Reasons**  _____

**Signature**  _____    **Date**  _____

---

## INMATE RECEIPT

**Inmate's Name**  HUDSON MAC                                    **Institution**  MCI CEDAR JUNCTION

**Number**  W48494                                              **Appeal Received Date**  26-OCT-2004

**Staff Recipient**  Aucoin Ann Marie  CO I

**Superintendent's Signature**  David Nolan

# DEPARTMENT DISCIPLINARY UNIT
## ORIENTATION BOOKLET

Approved: _____          11|4|03

Superintendent                                              Date

# DDU INMATE ORIENTATION BOOKLET

## TABLE OF CONTENTS

**Orientation Process** ............................................................... p. 2-3
**DDU Monthly Review - Continuing Evaluation** ................. p. 3
**Cell Assignments** .................................................................. p. 3
**Operations** ............................................................................. p. 3
    1. Inmate Movement ........................................................... p. 3-4
    2. Food Services ................................................................... p. 4
    3. Alternative Feeding ......................................................... p. 4-5
    4. Searches ............................................................................ p. 5
    5. Urinalysis ......................................................................... p. 5-6
    6. State Property .................................................................. p. 6-8
    7. Post Admission Adjustment .......................................... p.8
    8. Earned Privileges
       (Radio/Television/Visiting/Telephone) ...................... p. 8-12
    9. Mail ................................................................................... p. 12
    10. Rounds ............................................................................ p. 12

**Medical, Hygiene, and Sanitation** ...................................... p. 13

    1. Correctional Medical Services ...................................... p. 13
    2. Showers and Shaving ...................................................... p. 13-14
    3. Haircuts ............................................................................ p. 14
    4. Laundry Services and Linen .......................................... p. 14
    5. Cell Sanitation ................................................................ p. 14

**Recreation** ............................................................................. p. 14-15
**Education** ............................................................................... p. 15
**General Library** .................................................................... p. 15-16
**Law Library Services** .......................................................... p. 16

    1. Access to the DDU Law Library Legal Research Area ... p.16
    2. DDU Legal Research – General Operation .................. p. 16-17
    3. Legal Assistance – Responsibility of Inmate/Staff ..... p. 17
    4. Access to Materials from the Main Law Library ........ p.17-18
    5. Legal Stationery Supplies ............................................. p. 18
    6. Scheduling ....................................................................... p. 18
    7. Photocopying .................................................................. p. 18
    8. Violations ......................................................................... p. 18

**Attachments**

## Orientation Process

**Note:** **Effective June 1, 2001, <u>any inmate serving a prior sanction(s)</u> for disciplinary offense(s) occurring on or after June 1, 2001 shall be required to serve such sanction(s) for up to the first six months of a Departmental Disciplinary Unit (DDU) Sentence.**

1.  Upon entering the DDU, each inmate will be issued an Orientation Booklet to familiarize himself with the rules and regulations of the unit. An initial phone call will be granted (3-11 Shift) to afford the inmate the opportunity to notify someone of their placement in the DDU. (A Telephonic Interpreter Service is available if needed). It is recommended that the Orientation Booklet be read before making this call. A Correctional Program Officer will meet with the inmate in a timely manner to:

    A.  review any potential enemy situations the inmate wishes to report

    B.  answer questions about the Orientation Booklet

    C.  ensure that mental health services has been notified of admission

    D.  assess self-admitted history of suicidal ideation or any chemical dependencies.

    E.  the inmate will be issued a DDU Orientation Booklet and must sign acknowledging receiving it.

    F.  complete an Orientation Intake Form. The inmate shall sign acknowledging the receipt of the orientation to the rules and regulations of the DDU and that he was given the opportunity to ask questions relative to the DDU Orientation Booklet.

2.  The inmate shall be evaluated by:

    A.  Health Services –Institutional contracted medical staff will meet with the inmate for initial medical screening and inform him how to request medical/dental services. The sick call procedure will be explained at this time. The DDU Director/Captain will be notified of the completion of each initial medical screening.

    B.  Mental Health - Psychological Services staff will meet with and prepare a written assessment on each inmate as part of the orientation process. These assessments may include recommendations to monitor for crisis intervention.

3.     Refusal(s) by an inmate to participate in any phase of his orientation shall be documented by the appropriate DOC or Institutional Contracted Medical staff person assigned to provide that part of the orientation.

## Department Disciplinary Unit Monthly Review

1.     Every month the Director of the DDU or his designee shall conduct a formal monthly review of each inmate.

   A.     Reviews shall be formal in nature. The inmate must appear for each review at which time his conduct during the previous 30 days will be assessed.

   B.     An inmate's refusal to attend his monthly review will result in him not being credited the previous month's DDU time; as well as loss of all pending and previously earned privileges, (i.e. radio, TV, visits, telephone).

   C.     A guilty finding on any major disciplinary report will result in him not being credited with the review period in which the report was written as well as loss of all pending and previously earned privileges (i.e. radio, TV, visits, and telephone).

## Cell Assignments

1.     The Director/Captain of the DDU shall have complete discretion and authority to move inmates throughout the DDU on his/her demand.

2.     Changes in cell assignments shall be made periodically to enhance security. Any refusal by an inmate to move from one cell to another will result in disciplinary action and may necessitate a forced move.

## Operations

1.     Inmate Movement

   A.     All inmate movement within and outside of the unit will be in full restraints as follows:

      (1)     cuffs, behind the back,
      (2)     waist chain w/cuffs, for outside of the unit, and
      (3)     leg restraints.

   B.     All movement within and outside the unit will be by a hands-on escort. (Outside of unit: will be a (2) two person escort)

C.    Only <u>ONE</u> inmate may be out of his cell, on a tier, at any given time.

NOTE:    The <u>only</u> exception to this will be in a <u>LIFE THREATENING</u> situation and only when additional staff are present.

2.    Food Services – Inmates will be served the same number of meals and the same portion of food served to inmates in general population including special diets that are medically prescribed by the dietician.

A.    All inmates will be fed in their cells.

B.    Meals shall be delivered by unit officers in food trays according to the following approximate schedule:

| Breakfast | 7:00 a.m. - 7:30 a.m. |
| Dinner | 11:30 a.m. - 12:00 p.m. |
| Supper | 4:30 p.m. - 5:15 p.m. |

Note:  Refused or unwanted meals shall not be passed to another inmate.

C.    Upon completion of the meal, inmates are to return all trays, milk and/or juice containers and eating utensils. Officers will collect these articles. Refusal to return or throwing of food, food containers, utensils, drink containers, or liquids will result in disciplinary action and the inmate being placed on alternate feeding status.

D.    Deprivation of food shall never be used as punishment or for any other reason.

3.    Alternate Feeding – The Superintendent may place an inmate on alternate feeding status for up to five (5) consecutive days if it is determined that the inmate is throwing food, food containers, utensils, drink containers, liquids, urine, or feces.

A.    Procedure for Alternate Feeding

(1)    Inmate's cell light is turned on.

(2)    Inmate is asked if he is willing to comply with the alternate feeding procedure.

(3)    If the inmate is willing to comply, he will be instructed to back up to the cell door with his hands behind him and then the wicket will be opened and his pre-packaged meal and drink will be placed in his hands. This same procedure in reverse will be used to collect the empty food/drink packaging.

       (4)     If the inmate refuses to comply with the alternate feeding procedure, it will constitute a refusal to accept the meal.

B.    Removal from Alternate Feeding Status

       (1)     An inmate on alternate feeding status will be asked after each meal if he will comply with the rules and regulations. At that time the necessity for continued alternate feeding status will be assessed by the DDU Director or his designee.

       (2)     In the event the DDU Director or his designee determines that an inmate may be removed from alternate feeding status, the information will be forwarded to the Superintendent.

       (3)     The Superintendent shall review this request and decide whether to approve or deny. In the event of a denial, alternate feeding will continue for another period up to two (2) days. Alternate Feeding Status shall not exceed seven (7) days.

4.    Searches - Searches are important for the overall safety and security of employees and inmates.

    A.    Strip Searches - Inmates shall be strip-searched each time they leave their cell and must be strip-searched when exiting or returning to the DDU. Inmates are further required to undergo strip searches prior to returning to their cells from the following areas:

       (1)     contact visits, and
       (2)     recreation, (random selection).

    B.    Pat Searches - Inmates are required to submit to a pat search prior to going to or leaving any area not listed under the above section.

    C.    Cell Searches - All cells will be searched at least once a week.

       (1)     During cell searches inmates shall be detained in another area.

5.    Urinalysis - Urinalysis will be conducted in accordance with 103 DOC 525, Institutional Procedures.

A.    Refusal by an inmate to provide a urine specimen will result in disciplinary action.

6.  State Property - All inmates will be issued a standard clothing issue upon admission to the DDU.

> 1 fire retardant mattress, state issue
> 1 pillow, state issue
> 1 blanket, state issue
> 4 sheets, state issue
> 2 pillowcases, state issue
> 2 towels, state issue
> 2 face cloths, state issue
> 3 sets of scrubs, state issue
> 7 T-shirts, state issue
> 7 shorts, state issue
> 7 pairs of socks, state issue
> 1 pair of sneakers, state issue
> 1 pair of shower tongs, state issue
> 1 pair prescription glasses/contacts (no sunglasses unless medically prescribed)
> • approved religious items list are available from the Director of Treatment
> hearing aid(s) as medically prescribed
> 1 set of dentures/plate
> 1 plastic cup, state issue
> 1 wristwatch
> 1 wedding band (traditional)
> 1 Bible/Koran (religious book), 1 Dictionary
> 1 pen, pad of paper, 12 envelopes, state issue
> stamps (purchased through the Canteen)
> total of 10 books (books/magazines need to be on the approved distributors list), and one (1) cubic foot of legal material
> amount of personal letters, post cards and pictures not exceeding what can fit in a shoebox the size of 13 ½" x 9"x 4 ¾" deep.

Any item of property may be removed from an inmate's cell if the DDU Director determines that it is being misused to cause injury to the inmate or others.

A.    Kufi Caps/Prayer Beads - In order to purchase Kufi Caps/or Prayer Beads at MCI-Cedar Junction:

(1)    Inmates who reside in DDU will be allowed to purchase religious items pertaining to their religious beliefs if those

items are permitted in accordance with the Religious Services Handbook. Any request for an item not covered by the Religious Services Handbook will be governed by 103 CMR 471 Religious Programs and Services.

(2) Inmates will be allowed to purchase the items using the applicable order form. (Order form can be requested from staff)

(3) Inmates must fill out the order form completely. A purchase slip and a property permission slip will also be needed to purchase these items.

(4) Kufi Caps and Prayer Beads listed on the order form are the only type that will be permitted.

(5) The completed order form, purchase slip and property permission slip will be reviewed by the Director of Treatment and approved by the DDU Director or designee.

B.    Personal Hygiene Items/State Issue - The maximum allowable cosmetics (listed below) may be kept in an inmate's cell. Inmates will not be permitted to accumulate these items:

toilet paper - 1 roll
thumb brush - 1
toothpaste - 2 small tubes
soap - 1 bar - 3 ounce size
comb - 1 (no handle)

The following items will be issued at "shower time" and retrieved after the shower:

1 disposable razor
shaving cream
shampoo

NOTE:    If possession of any item specified above is determined to present a threat to the safety or security of staff, inmates, or state property, the DDU Director may deny an inmate of that item.

An inmate may be required to use an electric razor if in the opinion of the Director the inmate poses a threat to the safety of himself, other inmates or staff if allowed to utilize a disposable razor.

C.     Personal Property - All personal property not mentioned above will be contraband upon admission to the DDU and handled in accordance with the provisions of the property policy, 103 CMR 403.

Any items confiscated will be logged on a Contraband Notification Form and the Property Officer will sign the sheet. A copy of the signed Contraband Notification Form will be given to the inmate along with a Property Disposal Form.

D.     Winter Items – The following state issue items will be maintained in the unit and provided to inmates for the winter months:

coat
hat
thermals
second blanket

7.     Post Admission Adjustment - After completing a period of 30 consecutive days of satisfactory adjustment, i.e. a disciplinary report free period, each inmate will be permitted additional items/privileges as set forth below. The DDU Director or his designee will determine satisfactory adjustment based on a review of an individual's DDU folder, the disciplinary record for the preceding period and attendance at the monthly review. Actions resulting in disciplinary sanctions during the post adjustment period will result in a loss of privileges and the imposition of a new 30-day adjustment period.

8.     Earned Privileges

A.     Radio - After 30 consecutive days of disciplinary report free Behavior, an inmate will be issued a state owned radio to use during that period in which he remains disciplinary report free. A guilty finding on any major disciplinary report shall result in the inmate having to complete a 30 day disciplinary report free period (not withstanding any loss of radio sanction), to again be eligible for radio privileges. Damage or misuse of a radio will result in its removal from the inmate and loss of this privilege until any/all damages have been paid. After restitution is made, a 30-day disciplinary report free period will be imposed before re-issuing a radio.

B.    Television - After 60 consecutive days of disciplinary report free behavior an inmate will be issued a state owned television to use during that period in which he remains disciplinary report free. A guilty finding on any major disciplinary report shall result in the inmate having to complete a 60 day disciplinary report free period (not withstanding loss of radio/television sanction), to again be eligible for television privileges. Damage or misuse of a television will result in its removal from the inmate and loss of this privilege until any/all damages have been paid. After restitution is made, a 60-day disciplinary report free period will be imposed before re-issuing a television.

NOTE:    (1)    Earplugs must be used to listen to a radio and are issued in conjunction with the radio.

(2)    Radios and televisions must be signed for by the inmate upon issuance.

C.    Visiting - DDU inmates will earn visiting privileges as follows:

(1)    remain disciplinary report free for 30 consecutive days and attend monthly review in order to have one (1) visiting period in the following month;

(2)    remain disciplinary report free for 60 consecutive days and attend monthly review in order to have two (2) visiting periods in the following month;

(3)    remain disciplinary report free for 90 consecutive days and attend monthly review in order to have three (3) visiting periods in the following month;

(4)    remain disciplinary report free for 120 consecutive days and attend monthly review in order to have four (4) visiting periods in the following month.

A guilty finding on any major disciplinary report shall result in the inmate having to begin over the process of earning visiting privileges. All visiting periods must be used prior to the date of the next scheduled review or be forfeited. (Likewise, all unused periods will be forfeited).

(5)    Visitors - Social visits are restricted to a choice of four (4) adults and must be approved by the Superintendent or his designee. Requests for changes in visitors may be made six months from date of original approval. A limit of two (2)

adult visitors per inmate shall be allowed during each visiting period. The limit shall not apply to children under 14 years of age. However, only four visitors per visit are allowed. (See Attachment A)

(6)     Location - All social visits are conducted in the non-contact visiting Room within DDU.

(7)     Visiting Schedule - Visiting schedule is as follows everyday:

| | |
|---|---|
| 8:00 a.m. | 2:00 p.m. |
| 9:00 a.m. | 6:00 p.m. |
| 10:00 a.m. | 7:00 p.m. |
| 1:00 p.m. | |

(8)     Duration of visits - Visits are for one (1) hour.

(9)     Scheduling of Visits - Visits must be scheduled 24 hours in advance. The intended visitor is responsible to contact the Administrative Control Officer to schedule the visit between the hours of 8:00 a.m. - 2:30 p.m.

(10)    Cancellation of visits – The visit will be canceled and the inmate's visiting period forfeited if the visitor fails to arrive within 30 minutes after the visit was to begin. There are no provisions for granting a makeup visiting period.

(11)    Attorney Visits - Attorney visits shall be in accordance with 103 CMR 486.

D.     Telephone - DDU inmates will earn telephone privileges as follows:

(1)     remain disciplinary report free for 30 consecutive days and attend monthly reviews in order to have one (1) telephone privilege in the following month;

(2)     remain disciplinary report free for 60 consecutive days and attend monthly reviews in order to have two (2) telephone privileges in the following month;

(3) remain disciplinary report free for 90 consecutive days and attend monthly reviews in order to have three (3) telephone privileges in the following month;

(4) remain disciplinary report free for 120 consecutive days and attend monthly reviews in order to have four (4) telephone privileges in the following month.

A guilty finding on any major Disciplinary Report shall result in the inmate having to begin over the process of earning telephone privileges. All telephone periods must be used before the date of the next scheduled review or forfeited. Any alteration of a telephone slip will render it invalid and result in disciplinary action.

(5) Telephone calls will be scheduled as follows: (Subject to operational needs)

7-3 Shift Sunday, Monday, Wednesday, and Saturday (All Tiers)

9:00 a.m. - 11:00 a.m.
1:00 p.m. - 2:30 p.m.

3-11 Shift Sunday - Tuesday - Thursday

A - 1 & 2    B - 1 & 2    C - 1 & 2

Sunday - Wednesday - Friday

A - 3 & 4    B - 3 & 4    C - 3 & D-Wing

6:30 p.m. - 9:15 p.m.

(6) Inmates serving disciplinary isolation will not be allowed use of the telephone except in cases of verified emergencies.

(7) Any violations in the use of telephones (i.e. refusal to return the telephone, operator complaints, damage) shall result in disciplinary action under 103 CMR 430, Disciplinary Policy, including the loss of telephone privileges.

8.  Inmates owing restitution as a disciplinary sanction for damage and/or destruction of a telephone will not be allowed personal telephone privileges until such restitution has been made.

9.  Mail - Inmates in the Department Disciplinary Unit will be subject to 103 CMR 481, Mail Regulations. Prior to placing any mail in the mailbox the return address will be checked.

10. Rounds - The DDU Director and Captain will make a complete round each workday. Inmates may utilize this opportunity to express any concerns.

    The Lieutenant-in-charge of each shift shall also make a complete round each day.

    The Lieutenant-in-charge of each shift shall designate an officer(s) assigned to the unit to make periodic rounds ensuring each inmate can be physically observed and accounted for (MUST see living, breathing person). Rounds will be made every (30) thirty minutes and documented in the unit log unless conditions warrant more frequent observation.

    A Correctional Program Officer shall if necessary make three (3) rounds per week, institutional needs permitting and ensure completion of a weekly status report of each DDU inmate. The report shall be distributed to the following:

    a.  Superintendent
    b.  Deputy Superintendent for Operations
    c.  Deputy Superintendent for Programs
    d.  Director of Security
    e.  Director of Department Disciplinary Unit

    Institutional Contracted Medical staff person shall make a daily round in the DDU. These rounds shall take place more frequently if needed. Staff from Mental Health Services and all Chaplains will make weekly rounds.

    A.  Inmate religious advisors, community volunteers, or assistants will not be permitted to visit the DDU.

    B.  Attendance at congregate religious services will not be permitted.

D.D.U. Orientation Booklet - 12
October 31, 2003

## Medical, Hygiene, and Sanitation

1.  Medical Services – A daily round of the DDU shall be made by an Institutional Contracted Medical staff person. Inmates should take advantage of this opportunity to express their day-to-day medical concerns.

    Medical screening shall be scheduled for each inmate upon transfer to the Department Disciplinary Unit. Screening will be conducted prior to cell placement. DDU inmates shall receive the same medical services as those inmates in general population.

    During medication distribution rounds, inmates must be properly dressed when approaching their cell door for receipt of medication.

2.  Shower and Shaving - Inmates are permitted to shower three (3) times per week. Razors will be issued at shower time (See Personal Hygiene items). Razors will be replaced weekly.

    Schedule is as follows:

    A-1, A-2, B-1, B-2, C-1, C-2, Tuesday, Thursday, and Saturday

    A-3, A-4, B-3, B-4, C-3, D-Wing, Monday, Wednesday, and Friday

    Showers will be taken during the 3-11 Shift.

3.  Haircuts

    a.  Inmates may receive one (1) haircut every sixty- (60) by submitting a request slip to the CPO III. The CPO III will generate a list for Sunday haircuts. The list will be cross-referenced for enemy situations with the inmate barber. Inmates are required to pay $1.50 for a haircut. (Please see 103 DOC 762 Inmate Haircut Fees for detailed payment procedures).

4.  On scheduled haircut days, an inmate barber (from the main institution) will be escorted to the D.D.U., strip searched and given a jumpsuit (that has been searched) to put on and will then also clear the B.O.S.S. Chair.

5.  The inmate barber will be placed in the barbershop and the D.D.U. Two (2) staff members will escort inmate into the barbershop.

6.      The D.D.U. inmate will remain in full restraints and the escorting staff
        will remain with the D.D.U. inmate for the duration of the haircuts.

7.      After all haircuts have been completed the inmate barber will be strip
        searched again, given back his own jumpsuit and escorted back to the
        main institution, after clearing the boss chair.

Notes:

•       Hours of Operation are:
        8:30 a.m. - 2:30 p.m.
•       Inmate barbers will use only clippers when performing haircuts.
•       Haircuts will be generic, not personalized

4.      Laundry Services and Linen - Laundry service is provided weekly.
        Inmates are required to hand all items to the tier officer who will inventory
        and place them in the appropriate laundry bag. Laundry will be picked up
        on Sunday evening and returned Monday evening.

5.      Cell Sanitation - Inmates shall keep their cells clean at all times.
        Cell cleaning will be conducted on Saturday by the 7-3 shift (cleaning
        supplies will be available.) Rubbish bags will be emptied during these
        periods. In addition, the following applies:

        A.      windows will not be covered or blocked in any manner;

        B.      vents will not be covered or blocked in any manner;

        C.      floor coverings (i.e. rugs) are not allowed;

        D.      nothing may be affixed to or hang from any surface or wall in a
                cell. Photographs, magazine pictures and/or drawings will be
                considered contraband if found affixed to any surface in a cell;

        E.      graffiti or defacing of any surface will result in disciplinary action;
                and

        F.      all property approved for retention shall be neatly stored in the cell.

## Recreation

1.      Inmates in the DDU shall be permitted one (1) hour recreation
        periods five days per week. This will be on an individual basis.

2.      Dress code for recreation is restricted to scrubs.

3.  Recreation periods may be curtailed or modified when safety, security or other emergencies require (i.e., severe weather). The Director or Captain of the DDU shall make the determination.

4.  The Commissioner of Correction or his designee must authorize continued curtailment or modification of exercise or recreation in excess of 72 hours.

**Education** - There will be a GED course available by video to those inmates that have earned the television privilege.

**General Library** - Library book distribution will be on a weekly basis subject to staffing patterns.

A.  The following types of reading materials shall be permitted for use in an inmate's cell:

   (1)  Any combination but not more than a total of ten (10) items from the following list are allowed:

      Personal or Library Books
      Paperback Books
      Newspaper
      Magazines
      Bible or Koran
      Dictionary

      Personal paperback books/magazines/newspapers must come from the publisher and the Director of the DDU or his designee must approve all purchases/subscriptions.

      a)  Inmates will only be allowed one magazine subscription at a time.

      b)  Inmates will only be allowed one newspaper subscription at a time (includes Sunday).

      c)  Gift subscriptions/book purchases must be pre-approved. Inmates owing restitution will not be allowed gift subscription/purchases.

      d)  Only four paperback books may be ordered per month. Hardcover books will not be accepted.

e)  All paperback books and magazines will be marked (INMATE NAME) to allow for ownership identification.

f)  Paperback books and magazines will not be given to or loaned to another inmate.

g)  Paperback books may be donated to the library cart through the Property Officer who will mark them accordingly.

h)  All un-paid literature will be considered contraband and handled as such.

(2)  Only two (2) books may be borrowed from the library cart at a time.

B.  Inmates will be subject to disciplinary action for lost or damaged library books.

C.  Inmates serving disciplinary isolation will not be afforded materials from the book cart.

**Law Library Services** - the following procedures will be used when requesting law library services:

1.  Access to the DDU Law Library Legal Research Area

a)  Inmates who wish to do research must obtain a "Legal Research Period Request" form from a Tier Officer. (See Attachment B)

b)  Upon completing form the inmate will return it to a Tier Officer who will deliver it to the DDU Lieutenant. The DDU Lieutenant will assign the inmate the next available time slot in the library.

c)  Requests will not be honored without a request form unless approved by the DDU Director or his designee. Requests for a specific time will not be honored.

7.  DDU Legal Research – General Operation

a)  All inmates will be brought to a Research Area in restraints. After the inmate is in the designated area and the door is secured, the cuffs will be removed, but the leg iron will remain. Cuffs will be replaced before the inmate exits the Law Library.

    b)    Only legal work may be brought in, or worked on, in the Research Area. Any non-legal work will be confiscated and sent to property as contraband.

    c)    Inmates who are disorderly or disruptive will have their appointment terminated.

    d)    Inmates will be strip searched going to and returning from a Research Area. All material going to and from a Research Area will be inspected to ensure that it is legal in nature.

    e)    The officer in charge of the DDU on the 7-3 or the 3-11 shift will inspect the Research Area before and after each scheduled period to assure that there has been no damage to books or equipment and will search for contraband.

3.    Legal Assistance - Responsibility of Inmate/Staff

    a)    Inmate advisors or inmate law clerks will not be permitted in the DDU.

    b)    All communications between inmates in the DDU and the law library (main institution) will be searched.

    c)    All inmate legal materials going to or coming from the main institution law library will be searched.

    d)    Whenever a "Law Library Request" is determined to be improper or unreasonable, it shall be referred back to the inmate. The staff person doing this shall notify the inmate of the reason.

    e)    Notary Public - Notary services may be requested through the Director of Treatment.

4.    Access to Materials from the Main Law Library

    a)    If inmates need access to legal research material in the main institution law library, which is not available in the DDU, they must obtain a "Request for Access to Materials from the Main Law Library" form. The Request Forms are available from the Tier Officer. (See Attachment C)

    b)    Completed forms will be delivered daily, Monday through Friday, to the Institution Librarian by the DDU Correctional Program Officer.

    c)    The Librarian will determine whether or not the material or an equivalent is available in the DDU. If the material is not available in the DDU but is available in the main law library, he/she will then either:

        1.    make copies of the requested material and provide them for the inmate or;

        2.    place the requested material in the DDU Law Library during the time the inmate is scheduled to use the library. After the inmate has used the material it will be returned to the main law library.

5.    Legal Stationery Supplies

    a)    If inmates need legal supplies such as paper, envelopes or pen, they are available through the property officer.

    b)    There are limitations on the amount of supplies an inmate can receive at any one time. Access to such supplies will be restricted if it is determined that an inmate is using issued supplies for anything other than their intended purpose.

6.    Scheduling - The hours for Legal Research will be daily as follows:

    8:00 a.m. - 10:00 p.m.

    a)    Inmates on Disciplinary Isolation Status will not normally be allowed law library time. (Exceptions to this may be granted upon written request to the Director of the DDU citing the specific reason for the request).

7.    Photocopying - Inmates must demonstrate the need for photocopying. Up to two (2) photocopies may be made, as needed, for the opposing attorney and a file copy. The original must be submitted to the court.

8.    Violations - Any violation in the use of the research area will result in disciplinary action and may mean the loss of research privileges and any other authorized punishment pursuant to 103 CMR 430, Disciplinary Policy. Inmates denied access pursuant to 103 CMR 430, Disciplinary Policy, may be provided with a reasonable amount of legal materials in the form of photocopies. All photocopy material is subject to 103 DOC 478, Library Services, Institutional Procedure.